522 A.2d 73

In re William ANGRY, Jr., a Minor. (Two Cases)

Appeal of William ANGRY, Sr. by His Guardian Ad Litem, Joseph F. BATTLE, Esq.

Appeal of Donald E. WYDRZYNSKI, Esquire, Guardian Ad Litem for Cheryl Guy ANGRY, Biological Mother (Involuntary Relinquishment of Parental Rights).

Superior Court of Pennsylvania.

Submitted Jan. 5, 1987.

Filed March 5, 1987.

Joseph F. Battle, Jr., Chester, for appellant (at 1427).

Donald E. Wydrzynski, Media, for appellant (at 2528).

Roger R. Ullman, Swarthmore, for appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is a consolidated appeal from two Decrees terminating the parental rights of William Angry, Sr. and Cheryl Guy Angry in their child William Angry, Jr.

William Angry, Jr. was born on December 9, 1984 while the mother was an in-patient in the psychiatric unit of Crozer-Chester Medical Center in Delaware County, Pennsylvania. At the time of birth, Children and Youth Services of Delaware County was notified and informed that the child's father had threatened to kidnap the baby from the hospital nursery. On December 13, 1984, the child was placed in the custody of Children and Youth Services. The record and proceeding in the Juvenile Court are not part of this proceeding, but the testimony at the termination hearing established that the child was adjudicated dependent on January 30, 1985 by reason of neglect and being without proper parental care or control. (N.T. 4/17/86, p. 9). Subsequent review hearings of June 4, 1985 and December 3, 1985 appear to be timely and proper. (N.T. 4/17/86, p. 34).

On December 11, 1985, petitions for termination of parental rights of both parents were filed. A hearing was conducted on April 17, 1986 with final Decrees dated April 21, 1986, entered April 30, 1986, granting the petitions. Appeals by both parties were filed and are consolidated before us.

On appeal, both parents contend that Children and Youth Services failed to prove by clear and convincing evidence that they are incapable of parenting a child at present and the incapacity will not be remedied in the future.

Children and Youth Services contended that termination was proper under 23 Pa.C.S.A. § 2511(a)(2) and (5), which provides:

### § 2511.  Grounds for involuntary termination

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

.    .    .    .    .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

.    .    .    .    .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

The central thrust of the arguments proposed by both parents is that the evidence presented in support of termination of parental rights was speculative, based on past behavior, and predictive in nature due to the fact that neither parent was permitted an opportunity to have custody of their son.  It is their theory that a child cannot be determined to be dependent until the parents have been given custody and then failed in their parental responsibility, and secondly, that permanent removal or termination of parental rights is not permissible until the parents have been assisted with all of the available resources of the children and youth agency and community support systems. While generally true, this concept is not absolute and is inapplicable here.

The doctrine of "prognostic deprivation" was first enunciated by this Court in *Matter of DeSavage*, 241 Pa.Super. 174, 360 A.2d 237 (1976). In that case, it was held:

> The rule of law appellants request us to announce is overly restrictive. The legislature defined "deprived child" in exceedingly broad terms precisely because it is impossible to foresee all the possible factual situations that may arise. Further, the broad definition enables the experienced juvenile court judge to apply his training and compassion to the unique facts of each case. The proposition asserted by appellants would compel the juvenile court judge to place the child in the home of the natural parents to determine whether they are able to render proper care, and ignores the possibility that if the "experiment" proves unsuccessful, the consequences to the child could be seriously detrimental or even fatal. We choose not to force the hand of the juvenile judge. The important interest of the parents are best maintained by applying the strict standard of proof in deprivation cases, not by foreclosing the juvenile court from finding deprivation on the basis of prognostic evidence.

*Id.*, 241 Pa.Superior Ct. at 183–84, 360 A.2d at 241–42. *See also In re Adoption of Michael J.C.*, 506 Pa. 517, 486 A.2d 371 (1984); *In the Interest of Black*, 273 Pa.Super. 536, 417 A.2d 1178 (1980).

The doctrine of prognostic deprivation is equally applicable to a termination proceeding under 23 Pa.C.S.A. § 2511(a)(2), (5) as it is to a dependency proceeding under the Juvenile Act, 42 Pa.C.S.A. 6301 et seq. The starting point for both types of cases is the same, that is, a judicial finding by clear and convincing evidence that state intervention is required. Juvenile Act, 42 Pa.C.S.A. § 6341(c); Adoption Act, 23 Pa.C.S.A. § 2511. To the extent that the Juvenile Act and the Adoption Act relate to state intervention in parent-child relationship, the Acts may be considered in pari materia. *In Re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978) cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978). Involuntary termination of parental

rights presupposes a finding by the Juvenile Court that the child is dependent and that, in the best interest of the child and by reasons of "clear necessity", removal from the parental home is required. Having made that determination on the basis of prognostic evidence when the child has never been in the parents' custody, as here, a finding of the continuing incapacity of the parents to fulfill the parental role, by clear and convincing evidence, will support involuntary termination of parental rights under section 2511. *See also Adoption of Michael J.C., supra.*

In a termination proceeding, the court must go one step further than in a dependency hearing under the Juvenile Act: "Any decision to remove the child from his home must be reconciled with the paramount purpose of preserving the unity of the family." *In Re Frank W.D.*, 315 Pa.Super. 510, 518, 462 A.2d 708, 712 (1983) citing *Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976); *see* 42 Pa.C.S.A. 6301(b)(1). At the point when an involuntary termination of parental rights petition is filed, the petitioner is alleging, and must prove by clear and convincing evidence, that because of the inability or refusal of the parents in the past, present and foreseeably the future, to provide proper parental care, termination of parental rights would best serve the needs and welfare of the child. The shift is away from preserving the unity of the family, which is in concert with the best interest of the child, to acknowledgement that when the unity of the family cannot be preserved, despite the efforts of private county and state assistance and support, the best interest of the child is best served by freeing the child for adoption and providing a home which meets the requirements for proper parental care. *See Williams, supra.* The alternative is the limbo of perpetual foster care, which is an unstable and unhappy environment for the child and an untenable position for the state. Reflecting this shift in concern is 23 Pa.C.S.A. § 2511(b) **Other Considerations.** "The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child." The official comment to the Adoption Act of 1970 states that the provision 311(2) (forerunner of

§ 2511(a)(2)) "centers judicial inquiry upon the welfare of the child rather than the fault of the parent." Joint State Government Commission, Official Comment, Adoption Act (1970).

When reviewing a case of involuntary termination of parental rights, we are limited to determining whether the Decree is supported by clear and convincing competent evidence. *Matter of K.L.P.*, 354 Pa.Super. 241, 511 A.2d 852 (1986); *In re Adoption of B.K.W.*, 348 Pa.Super. 333, 502 A.2d 235 (1985). Absent an abuse of discretion or error of law, the Decree will not be disturbed. *K.L.P., supra,* citing *In re Baby Boy P.*, 333 Pa.Super. 462, 482 A.2d 660 (1984).

In view of the above considerations, we turn to the proceedings and the matters considered by the trial court.

In support of its claims, Children and Youth Services presented testimony by a social worker and a clinical psychologist. In addition, reports from the Child Guidance and Mental Health Clinic and In-Patient Psychiatry/Crisis Service at Crozer Medical Center were considered along with written reports by the psychologist.

In determining that the best interest of the child would be best served by termination of parental rights, the court reviewed the evidence presented. It was established that both parents had a history of mental illness and were unable to establish living arrangements for themselves, having been evicted from various residences because of their erratic behavior. Attempts at assistance were thwarted by problematic and threatening behavior of both parents. Testimony from the clinical psychologist was to the effect that the parents were not capable of parenting a child at present or in the foreseeable future.

The court noted that the parents had difficulty providing for their own basic needs and it would be inconceivable that they could provide for the child's needs. Finding that it was unlikely the situation would improve, but rather, probably worsen, the court held that it was in the best interest of

the child to be given the opportunity to be adopted so as not to remain in foster care indefinitely.

Testimony elicited concerning the mother established she was in Fairmont Psychiatric Hospital in 1974; in 1977, she was in Crozer Psychiatric Hospital; in 1981, she was in Sacred Heart Psychiatric Hospital, and she was involuntarily committed to Haverford State Hospital until November 1984 when she was again transferred to Crozer Psychiatric Hospital. She had received treatment at Community Services of Human Growth, at Crum Lynne Clinic and at Crozer's Crisis Service but did not follow through with recommended treatment. She was considered a threat to the safety of the staff and building. (N.T. 4/17/86, p. 15). The mother failed to comply with a court ordered psychological evaluation, which was required before she was permitted to have visitation with the child. In spite of repeated assistance from several community agencies, mother and father have moved and have been evicted frequently because of their violent behavior. Their whereabouts had been unknown to the C.Y.S. for much of the agency's involvement in the case. The most recent residence visited by the agency social work was found unfit for habitation. It was heated by an old gas oven in the kitchen; it was filthy and in serious disrepair. (N.T. 4/17/86, p. 13).

As to the father's psychological evaluation and treatment, after initial involvement in the Crum Lynne Clinic program, he refused to attend out-patient therapy. Three child visitations occurred and the therapist recommended no further visitation. Additionally, Mr. Angry became extremely hostile when the case worker and therapist attempted to comfort the crying infant. He also had unrealistic expectations concerning the infant's ability to walk and talk at six months of age.

The evaluating psychologist, Dr. Roeder, who had direct experience with the parents, as well as exhaustively reviewing their medical and psychological records, testified that both were incapable of parenting presently or in the foreseeable future. He offered testimony that the mother had

had numerous diagnoses from psychiatric hospitals and there had been sixteen psychiatric hospitalizations which he could document from the record. (N.T. 4/17/86, p. 42). In addition to a diagnosis of schizophrenia, paranoid type, she was diagnosed as schizophrenia, organic personality disorder, secondary to Huntington's Chorea. (N.T. 4/17/86, p. 42). The latter is a degenerative disease with a likelihood of continual decompensation. His opinion was that she could not parent even with all the available support services and her situation would only worsen in the future because of the progressive nature of her disease. (N.T. 4/17/86, p. 43).

Mr. Angry was diagnosed as paranoid schizophrenia in partial remission. He characterized him as angry, threatening and incapable of child rearing. (N.T. 4/17/86, pp. 46, 47). Under stress, he decompensates and becomes more distraught and at times more psychiatrically disturbed, more paranoid. (N.T. 4/17/86, p. 50). In addition to the testimony, several exhibits were admitted which were detailed reports and evaluations of the parents, which provided much more extensive documentation of their problems, supporting unequivocally the findings of the trial court that the parents could not parent presently or in the foreseeable future.

In reviewing the decision under the standard of review set forth above, we find no basis to disturb the Decrees entered by the distinguished trial judge, President Judge Francis J. Catania. The evidence relied on by the court was competent and clearly established the difficulty both parents were having coping with their own problems. Assistance which was offered failed to produce any hope for a substantial change, which would be necessary to consider placing the child with the parents. There is no abuse of discretion apparent in the court's determination that termination of parental rights is in the best interest of the child and the Decrees are thus affirmed.

At No. 1427 Philadelphia, 1986, Decree affirmed.

At No. 2528 Philadelphia, 1986, Decree affirmed.