767 A.2d 587 (2001)
In the Interest of L.S.G.,
Appeal of I.R.B., Natural Mother (at 346).
In the Interest of I.R.B.G.,
Appeal of I.R.B., Natural Mother (347).
Superior Court of Pennsylvania.
Argued November 29, 2000.
Filed January 23, 2001.
*588 Judith E. Patterson, Pittsburgh, for appellant.
Wendy L. Vaupel, Pittsburgh, for Allegheny County Children and Youth Services, appellee.
Before JOYCE, ORIE MELVIN and HESTER, JJ.
ORIE MELVIN, J.:
¶ 1 The Appellant, I.R.B., (Mother) appeals from the September 7, 1999 Order of the Court of Common Pleas of Allegheny County dismissing her exceptions to the trial court's order which terminated her parental rights to her two minor children. Mother asks us to reverse the trial court because she claims the evidence of grounds for termination was insufficient and the trial court failed to appoint Mother a guardian ad litem. For the reasons that follow, we affirm.
¶ 2 The facts and procedural history of this case may be summarized as follows. On April 7, 1996, L.S.G. was born to Mother.[1] Mother was born December 16, 1981. At the time she delivered this first child, she was fourteen years of age and still a child herself.[2] Mother voluntarily placed this child at birth with a family friend, Henrietta Hill.[3] The child was adjudicated dependent on May 31, 1996 and has never been returned to the care of Mother. A year later, on May 31, 1997, Mother gave birth to a second child, I.R.B.G., by a second man.[4] By this time, Mother was fifteen. Her second child was adjudicated dependent on August 18, 1997, after a physical altercation between Mother and this child's father during which time the child was accidentally struck. The child also had medical problems, which were not being properly addressed. She was placed with Mary Carpenter on July 18, 1997 and has since not been returned to the care of Mother.
¶ 3 According to the findings of the trial court:
CYF's initial goal for [the children] was reunification with Mother. Mother's family service plan had a goal of placing Mother at Whale's Tale McKeesport Outreach Center & Shelter (hereafter "MOCS")1 where she would take [the second child] and possibly [the first child] later. Mother was placed at Alternative *589 Program Associates residential facility ("APA"). According to the family service plan, mother was to adhere to APA's rules, attend Peabody High School on a consistent basis, follow the high school's rules, complete her homework, attend a parenting program, and have consistent visits with her children. Additionally, Mother was to have twenty (20) hours of mobile therapy and staff support. She was placed on twenty (20) milligrams of Paxil due to a diagnosis of Attention Deficit Hyperactive Disorder ("ADHD"). In a psychological evaluation at APA, Mother was also determined to have antisocial behaviors, to be impulsive, and to have oppositional defiant disorder ("ODD"). Mother never was placed at Whale's Tale MOCS as she failed to meet the goals of the family service plan which were to be accomplished prior to that placement.
Services provided to Mother include a parenting class Mother was to attend on Saturdays at Arsenal, but which she only attended one or two times. Mother stopped attending the program at Arsenal when she ran from the APA placement on September 24, 1997. It had been explained to Mother that attendance at the Arsenal program was important if she wanted to regain custody of [her children]. Mother was referred to living skills training at the Homewood Brushton YMCA. This training was to acquaint Mother with community services and provide some parenting instruction and independent living skills. Additionally, Mother was referred to adoption mediation to allow her to understand adoption and work with the adoptive parents to maintain a relationship with her children after adoption. However, Mother was rejected from the mediation as she was found to be too assaultive. Mother had previously assaulted a CYF caseworker. It was deemed too risky to allow Mother to know the address of the children.
Mother has an extensive history of running from CYF placements. CYF made special arrangements to allow mother to visit with her children at APA, to minimize the disruption on Mother's school and weekend activities. Mother did not want weekend visits with the children as it would interfere with her weekend plans to be "out in the community" and having her nails done. Mother did not have consistent visits with [the children], as there were no visits when Mother was "on the run." Mother's visits with [the children] were supervised. Mother would not change a diaper when asked by the visitation supervisor, responding that she doesn't change diapers. During visits, the children clung to Ms. Hill, [the first child's] foster mother. Mother missed the only three (3) visits scheduled with her children between the hearing on May 12, 1999 and the June 17, 1999 hearing. On March 19, 1998, the goal for [the children] was changed from reunification with Mother to adoption.
Dr. Rosenblum, a clinical psychologist, noted that Mother appears to lack experience or parenting skills. Mother told Dr. Rosenblum that she was aware of the goals set for her by CYF and that she had not yet completed them. At the time of the evaluation, Mother was working at McDonald's, but told the psychologist that she would probably have to quit that job to start her parenting classes.
On September 4, 1998, CYF filed a Petition for Involuntary Termination of Parental Rights for [the second child] to terminate the rights of [the child's] natural parents. On March 29, 1999, CYF filed a Petition for Involuntary Termination of Parental Rights for [the first child] to terminate the rights of [the child's] natural parents. A hearing to terminate parental rights was held on May 12, 1999. The hearing was then continued to June 17, 1999, in part to allow Mother to engage in discovery, although discovery had been available to her prior to the May hearing. On June *590 17, 1999, this court granted CYF's petitions and terminated the parental rights of Mother and [Father to the first child] and the parental rights of Mother and [Father to the second child].
1 Whale's Tale MOCS is a placement facility with supervision in a structured environment for teen mothers which includes a parenting program.
Trial Court Opinion, 4/13/00, at 2-4 (citations to the record omitted.)
¶ 4 Based on these facts, the trial court issued an order terminating parental rights. Mother filed exceptions, which were denied. This appeal follows.
¶ 5 Mother sets forth two claims of error.
1. The court erred in terminating the natural mother's rights to the children because insufficient evidence of grounds for termination of rights had been presented under the Adoption Act 23 Pa.C.S.A. § 2511.
2. The court erred in proceeding with the involuntary termination of the parental rights of the natural mother by not recognizing her legal incapacity, to wit, her minority, and by failing to appoint a guardian ad litem to represent her.
Appellant's Brief at 5.
¶ 6 The principles to be applied in reviewing the propriety of the trial court's determination to terminate parental rights has most recently been set forth in In Re N.C., N.E.C., 763 A.2d 913, 2000 PA Super 362 (Nov. 30, 2000) as follows:
In appeals involving termination of parental rights, our scope of review is broad. In the Interest of Lilley, 719 A.2d 327, 329 (Pa.Super.1998). We consider all the evidence as well as the hearing court's factual and legal determinations. Id. Our standard of review, however, is limited to determining whether the decree of the hearing court is supported by competent evidence and whether the court gave adequate consideration to the effect of such a decree on the welfare of the children. Adoption of Atencio, 539 Pa. 161, 650 A.2d 1064 (Pa. 1994); In re Child M., 452 Pa.Super. 230, 681 A.2d 793 (1996), appeal denied sub nom. Child M. v. Smith, 546 Pa. 674, 686 A.2d 1307 (1996). However, if competent evidence supports the court's findings, we will affirm even if the record could also support the opposite result. Atencio, supra.

Id. at ¶ 19. Furthermore, we recognize in a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. In the Interest of Lilley, at 329-330 (citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re T.R., 502 Pa. 165, 166, 465 A.2d 642, 642-643 (1983)).
¶ 7 The rights of a parent may be involuntarily terminated on any of the eight grounds lists in 23 Pa.C.S.A. § 2511. Although in the present case Allegheny County CYF filed its petition under sections (2), (5) and (8), it needed only to prove grounds set forth in any one section. 23 Pa.C.S.A. § 2511(a). Under section (2), CYF had the burden of proving the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. 23 Pa.C.S.A. § 2511(a)(2). Under section (5), CYF had the burden of proving the child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of *591 the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. § 2511(a)(5). Finally, in the alternative, under section (8), CYF had the burden of proving the child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. § 2511(a)(8).
¶ 8 Based upon our review of the record in this case, we find the trial court more than adequately sets forth reasons well grounded in the record for its decision to terminate parental rights; and those reasons fully support the conclusion that parental rights should be terminated. The trial court found Mother clearly has failed to perform her parental duties, has failed to avail herself of the services offered to her to improve the situation and is not capable of parenting her children. Mother has been unwilling or unable to accept the responsibilities that come with being a mother to these children. Obviously she has not made them a priority in her life and she had not taken advantage of CYF's intervention. Unfortunately she has been unable to benefit from the parenting training and education offered during which time these children needed her. Furthermore, this situation has languished from the time these children were infants. In the meantime, Mother continues to be unable or unwilling to accept responsibility for them. These children are now nearly four and five years old and cannot be expected to wait in limbo for their mother to grow up.
¶ 9 Mother also argues the trial court erred in not appointing a guardian ad litem to care for her and insure her ability to care for her children. In this phase of her argument she concedes she is incapable of parenting these children, however; she attempts to place the blame for her parenting failure on the court and CYF. She argues that the court erred in refusing to appoint a guardian ad litem for her, yet she fails to flesh out exactly what a guardian ad litem would have done differently. As the trial court appropriately points out in its opinion, the Rule of Orphans Court provide:
When the termination of the parental rights of a parent who had not attained the age of 18 years is sought, unless the court finds the parent is already adequately represented, the court shall appoint a guardian ad litem to represent the parent.
Pa.O.C.Rules 15.4(c)(1) (italics added).
¶ 10 At the time of the hearing to terminate her parental rights, Mother was represented by counsel from Legal Aid for Children. In fact, she had two separate attorneys. Therefore, the trial court found this representation adequate so as not to require the appointment of a guardian. We agree. Our exhaustive research finds no Pennsylvania case addressing entitlement to a guardian ad litem in this situation. However, Black's Law Dictionary defines a guardian ad litem as a special guardian appointed by the court in which a particular litigation is pending to represent an infant, ward or unborn person in that particular litigation, and the status of guardian ad litem exists only in that specific litigation in which the appointment occurs. Black's Law Dictionary 706 (6th Edition 1991). The Pennsylvania Rules of Civil Procedure refers to a guardian ad litem as a person "representing the interest of a minor in ... [the] action," Pa. R.C.P. Rule 2026, with the power to "supervise and control the conduct of the action in behalf of the minor." Pa.R.C.P. Rule 2027. This would suggest such a guardian is meant to supervise and control litigation on behalf of the minor. Mother would have us expand the definition to have the guardian control and supervise her actions relative to her children and *592 thus relieve her of the responsibility of parenting them. It defies logic that she would argue the trial court erred in terminating her parental rights because she is potentially capable of performing her parental duties and yet on the other hand argue the trial court erred in failing to appoint a guardian ad litem because she is incapable of performing her parental duties. Having determined sufficient grounds for involuntary termination and finding Mother was adequately represented by counsel, we can find no error in this case.
¶ 11 Order affirmed.
NOTES
[1] The child's father is not a party to this appeal. His parental rights were terminated on June 17, 1999 and he has not contested the decision.
[2] Mother was declared dependent at the age of 11 and continued in the care of CYF under supervision of Juvenile Court at the time of this termination proceeding.
[3] Ms. Hill had been Mother's foster mother from 1991 to March of 1993.
[4] This child's father is not a party to this appeal. His parental rights were also terminated on June 17, 1999 and he has not contested the decision.