817 A.2d 505 (2003)
In re: J.T. and R.T.
Appeal of: J.L., Mother.
Superior Court of Pennsylvania.
Argued October 23, 2002.
Filed February 6, 2003.
*506 Michael L. Kuhn, Somerset, for appellant.
Darryl G. Geary, Somerset, for Children and Youth Services, appellee.
Before: MUSMANNO, LALLY-GREEN and KLEIN, JJ.
KLEIN, J.
¶ 1 Mother J.L. appeals from the March 2002 order of President Judge Eugene E. Fike, II, terminating her parental rights to her children, J.T., a girl now seven years old, and R.T., a boy now four years old. The father and former husband of J.L. has voluntarily relinquished his parental rights. We affirm.
¶ 2 Essentially, Mother claims on appeal that the reason for removal, the unsanitary condition of the home, in particular, fleas, lice, animal feces, has been remedied and therefore termination under 23 Pa.C.S.A. § 2511(a)(8) was improper. It is true that the mother made significant efforts to correct some of the horrible conditions that led to the children's placement. However, President Judge Fike concluded based on a reasonable interpretation of the record *507 that many of the key issues that led to placement still exist. He found, based on the psychologist's evaluation and other evidence, that "Mother lacks appropriate parenting skills and does not have the ability to supervise and care for the children properly." He concluded that Mother has failed to perform her parental duties not just for six months prior to the filing of the petition, but continuously after the children were placed in September 1999. While Mother is willing to parent the children, she is not now able nor is she likely to become able to properly provide for the children without intensive services by multiple agencies or providers. While CYS must provide reasonable services to assist a parent develop the skills to care for their children, continuing "intense services by multiple agencies or providers" is beyond what CYS is obligated to provide. Moreover, President Judge Fike found that the children are thriving with their foster parents, who intend to adopt the children.
¶ 3 Judge Fike found that many of the conditions which led to removal or placement of the children continued to exist after placement for a period of twelve months, that Mother was incapable of parenting without continued intensive involvement by Children and Youth Services (CYS) and other agencies, and that termination would best serve the needs and welfare of the children. This meets the requirements of 23 Pa.C.S.A. § 2511(a)(8), and on review we find the court's determination that CYS fulfilled its obligation to establish this by clear and convincing evidence is supported in the record. Matter of Adoption of G.T.M., 506 Pa. 44, 483 A.2d 1355, 1356 (1984).
¶ 4 A detailed discussion follows.
¶ 5 The children were initially placed in September 1999, due to unsanitary conditions in the home, lack of supervision, and because the children were at risk due to safety issues in the home. CYS involvement began in June 1998. At that time R.T. was a few months old and sleeping in a dresser drawer. J.T. was approximately 2 ½ years old and reportedly unsupervised. The house was infested with fleas, there was animal feces in the home, and the children were both infested with lice.
¶ 6 At the first permanency review hearing in March 2000, CYS concluded that although the parents had been cooperative in attending visits and meetings to review treatment goals, neither Mother nor Father had been able to maintain safe and adequate housing. The parents had separated and each was living with a friend. Father was sleeping on a couch in a friend's home; Mother was living with a friend where she had her own bedroom, but there was no additional room to accommodate the children.
¶ 7 At the second permanency review hearing in September 2000, Mother had not obtained housing, had not followed through with recommended counseling services to address her mental health issues and was not cooperative with respect to her medication. At a review hearing in December 2000, CYS reported that Mother had yet to obtain adequate housing, had been discharged from counseling due to lack of attendance, and had been unable to improve her quality of interaction with the children during visits.
¶ 8 At the third permanency review hearing in March 2001, CYS reported that the conditions had not improved and the goal was changed to adoption. Because the children had been in placement for fifteen of the past eighteen months, CYS filed a petition to involuntarily terminate parental rights in September 2001.
¶ 9 At the November 7, 2001 hearing on the petition to terminate parental rights, Mother testified that she was working four *508 days a week at the Somerset County Workshop, sponsored through Somerset County Mental Health/Mental Retardation, and was receiving counseling from the local Mental Health/Mental Retardation agency when needed. She continued to live with a roommate. Although she stated that the sanitary condition of the residence had been resolved (because she no longer lived at that residence), she acknowledged that her current residence was inadequate to house two children. She also admitted that her roommate took care of basic household chores, including cleaning, cooking and grocery shopping.
¶ 10 Lisa Maurer, a CYS therapist, testified that at a supervised visit in October, 2000, Mother was not able to interact with her children, lacked appropriate parenting skills, and, despite long-term involvement, had shown no improvement in her parenting abilities. Mother admitted that her ability to parent is conditioned upon assistance from CYS and other agencies, including weekly home visits. The therapist concluded, and the trial court found, that Mother would not be able to care for her children without continued intensive CYS involvement as well as services from multiple agencies, including mental health/mental retardation, and continued monitoring of both Mother and children. Ms. Maurer also indicated that there was no visible bond between Mother and the children.
¶ 11 Amy Brisky, a family support therapist for CYS, also testified. She stated that she had been working with Mother for a period of almost three years and in that time did not see any progress in parenting skills. In Ms. Brisky's opinion, there was nothing more that she could do to bring Mother to the point where she could properly supervise her children.
¶ 12 Catherine Keiser, the adoption caseworker for CYS, testified that there was no visible bond between Mother and the children. She also testified that the children had become anxious about their visits with Mother, that they would run from the foster mother when she was attempting to bring them to the visits, and that they would fight with her about attending the visits. She also testified that the children were closely bonded with one another, that they are doing well in the foster home, and that the foster parents intended to adopt both children if Mother's rights were terminated.
¶ 13 As stated above, the trial court terminated Mother's rights pursuant to section 2511(a)(8), which provides:
§ 2511. Grounds for involuntary termination
General rule.The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
* * * * * *
(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
23 Pa.C.S.A. § 2511(a)(8).
¶ 14 In reviewing an involuntary termination of parental rights, we must "employ a broad, comprehensive review of the record" in order to determine whether the termination order is supported by competent evidence. In re Adoption of T.M.F., 392 Pa.Super. 598, 573 A.2d 1035, 1044 (1990) (en banc); Matter of Adoption of G.T.M., supra. "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the findings of the Orphans' Court, [we] will not reverse a *509 hearing court's decision to terminate." In re Shives, 363 Pa.Super. 225, 525 A.2d 801, 802 (1987). While the scope of review is broad, we are limited to determining whether the order is supported by competent evidence and whether the court adequately considered the effect of such decree on the welfare of the child. In the Interest of L.S.G., 767 A.2d 587 (Pa.Super.2001). This court will affirm if competent evidence supports the trial court's findings, even if the record could also support the opposite result. Id. at 590.
¶ 15 Throughout the period of placement, and prior to the change of goal, Mother had not obtained suitable housing and had shown no improvement in her parenting ability. The trial court stated that although Mother wants to properly care for the children and has been willing to make efforts to reach that goal, she is presently incapable of properly caring for and supervising the children and is unlikely to become able to do so.
¶ 16 Mother has not demonstrated an ability to provide basic needs of a structured environment. See In re B.L.L., 787 A.2d 1007 (Pa.Super.2001) (statute permitting termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children; parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and may properly have his or her rights terminated); In re: Angry, 361 Pa.Super. 180, 522 A.2d 73 (1987) (finding of parents' continued incapacity to fulfill parental role, by clear and convincing evidence, will support involuntary termination of parental rights under section 2511); see also In re Adoption of A.N.D., 360 Pa.Super. 157, 520 A.2d 31, 37 (1986) ("Parents can no longer claim exculpation from the responsibility of parenthood due to an inability to fulfill that function.").
¶ 17 The trial court correctly noted that termination under subsection (a)(8) does not require evaluating Mother's willingness or ability to remedy the conditions that initially caused placement, nor does it require an evaluation of the availability or efficacy of CYS services. Cf. 23 Pa.C.S.A. § 2511(a)(5); see In re A.L.D., 797 A.2d 326 (Pa.Super.2002) (if parent appears incapable of benefiting from reasonable efforts supplied over realistic period of time, county Children and Youth Services has fulfilled its mandate and upon proof of satisfaction of reasonable good faith effort, termination petition may be granted). Though the state is required to make reasonable efforts to promote family stability and preserve family unity, In Interest of Feidler, 392 Pa.Super. 524, 573 A.2d 587, 588 (1990); In the Interest of S.A.D., 382 Pa.Super. 166, 555 A.2d 123, 124-25 (1989), we cannot require CYS to extend services beyond what our legislature has deemed a reasonable time after state intervention or require Herculean efforts by CYS or other agencies after the goal has changed to adoption. Nor, in the interests of the children, should we. The state's interest in preserving family unity must be weighed along with the state's interest in protecting children, see In re Adoption of A.N.D., 360 Pa.Super. 157, 520 A.2d 31 (1986), and a child's right to a healthy and stable environment. A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. See Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975); In re D.J.S., 737 A.2d 283 (Pa.Super.1999). See also In Interest of Lilley, 719 A.2d 327 (Pa.Super.1998) (parent's basic constitutional right to custody and rearing of his or her child is converted, upon parent's failure to fulfill parental duties, to child's right to have proper parenting and fulfillment *510 of his or her potential in permanent, healthy, safe environment).
¶ 18 Additionally, the court separately considered the effect the termination would have on the needs and interests of the children. B.L.L., supra. The children are doing well in a stable foster home, and the foster parents plan to adopt both children if Mother's rights are terminated. The court's finding that the needs and welfare of the children are best served by termination of the parental rights is supported by competent evidence in the record. See B.L.L., supra.
¶ 19 President Judge Fike determined that CYS had established the elements of subsection (a)(8) by clear and convincing evidence. The court found that the circumstances that led to the removal of the children, primarily inadequate housing, lack of supervision, and inadequate parenting ability, have continued for a period of twelve months after placement. The record supports this finding. See In re Shives, supra. We, therefore, find no error or abuse of discretion. Id.
¶ 20 Order affirmed.