J-S43017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2274 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001217-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2275 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000580-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2276 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001218-2019

J-S43017-22

| | | |
|---|---|---|
| IN THE INTEREST OF: I.I.A.-M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2277 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000581-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2278 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001219-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B.A.-M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2279 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000585-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |

- 2 -

J-S43017-22

APPEAL OF: K.D., FATHER         :
         :
         :
         :
         :
         :    No. 2280 EDA 2022

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001221-2019

IN THE INTEREST OF: A.I.D., A    :   IN THE SUPERIOR COURT OF
MINOR         :      PENNSYLVANIA
         :
         :
APPEAL OF: K.D., FATHER         :
         :
         :
         :
         :
         :    No. 2281 EDA 2022

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000582-2021

IN THE INTEREST OF: A.-R.D., A   :   IN THE SUPERIOR COURT OF
MINOR         :      PENNSYLVANIA
         :
         :
APPEAL OF: K.D., FATHER         :
         :
         :
         :
         :
         :    No. 2282 EDA 2022

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001222-2019

IN THE INTEREST OF: A.-R.I.D., A  :   IN THE SUPERIOR COURT OF
MINOR         :      PENNSYLVANIA
         :
         :
APPEAL OF: K.D., FATHER         :
         :
         :
         :

|  | : | No. 2283 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000583-2021

| IN THE INTEREST OF: M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2284 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001220-2019

| IN THE INTEREST OF: M.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2285 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000586-2021

| IN THE INTEREST OF: A.-R.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | No. 2286 EDA 2022 |

Appeal from the Order Entered August 11, 2022

- 4 -

In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001223-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.-R.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2287 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000584-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2288 EDA 2022 |

Appeal from the Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001432-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2289 EDA 2022 |

Appeal from the Decree Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000587-2021

J-S43017-22

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 17, 2023**

In this matter, K.D. (Father) appeals the decrees entered by the Philadelphia County Court of Common Pleas, which involuntarily terminated his rights to his eight Children, pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).[1] In addition to the termination decrees, Father also appeals the orders which changed the goal of the dependency proceedings from reunification to adoption. Lastly, Father also argues that his counsel was ineffective and that the trial court was biased. After review, we affirm the termination decrees and dismiss the goal-change appeals as moot.[2]

The relevant procedural and factual history is as follows. The family came to the attention of DHS in Summer 2019, when Mother's 14-year-old daughter, T.R. alleged abuse by both Mother and Father. Father is the

---

[1] The subject Children are:

- S.T.S, daughter, age 14
- I.D, son, age 10
- Ab. D., son, age 8
- A.-R.D. 1 son, age 7
- A.-R.D. 2., son, age 6
- Aa.D., daughter, age 5
- M.D., son, age 3
- S.D., daughter, age 2

It appears Father is not the biological father of S.T.S., but because Father's signed the acknowledgement of paternity, DHS proceeded with termination. DHS also terminated the rights of the unknown biological father.

[2] Mother had also appealed. Her case is separately listed before this panel.

- 6 -

stepfather of T.R.; T.R. is not the subject of these appeals.[3] T.R. alleged that Mother beat her and forced her to sleep outside. She also alleged that Father inappropriately touched her on her buttocks and breasts, made her stay in the bathroom while he showered, exposed himself to her, and on one occasion, licked the back of her ear.

These disclosures caused DHS to investigate the wellbeing of Father's seven other Children, who are the subject of this case.[4] The Agency interviewed the Children in the home. At that time, none of the Children disclosed abuse, but the caseworker believed that the Children were afraid to speak up and had tried to convey to the caseworker that Father could overhear to their conversation. Father had chosen the room for the caseworker's interview, and he could be seen visible pacing outside on the porch.

On July 25, 2019, DHS obtained orders for protective custody for the Children. After the shelter care hearing, the Children were temporarily committed to DHS custody. A subsequent disclosure revealed that one of the Children was beaten by Mother at Father's direction, and that she was made to sleep outside as punishment. The Child also alleged that she was forced to

_____

[3] T.R.'s biological father was unknown. The trial court previously changed the goal of T.R.'s dependency proceedings from reunification to another planned permanent living arrangement (APPLA), i.e., permanent long-term foster care until the age of majority. Father appealed that decision, and we affirmed. *See Interest of T.R.*, 283 A.3d 377 (Table), 2022 WL 2813796 (Pa. Super. 2022) (non-precedential decision).

[4] The youngest subject Child, S.D., was not yet born.

do chores in her underwear to ensure that she did not have any food on her person.

In September 2019, the Children were adjudicated dependent. The court learned that Mother had given birth to S.D., and that the birth was hidden from the agency. The facts that gave rise to the adjudications of the older Children were a predicate for the removal and eventual adjudication of S.D. The juvenile court instituted a single case plan, comprising of certain goals to aid Father with reunification. The goals included: to attend supervised visitation with the Children; to complete programs to address parenting, domestic violence and anger management; to submit to evaluations for his psychosexual behavior and parenting capacity; to obtain employment; and to obtain housing.

Meanwhile, investigations into the parents' alleged abuse continued. The Children subsequently participated in a forensic interview with Philadelphia Children's Alliance, where the Children were referred for evaluations by Dr. Michelle Dominguez, M.D., a child abuse pediatrician at St. Christopher's Hospital for Children. During their evaluations, the Children made additional disclosures. They claimed, among other allegations, that Father would punch them and whip them with extension cords; that their refrigerator was chained shut so they could not get food; that Father forced them to eat the ants that were in their cereal; and that they were sometimes forced to stay in the basement, which was often dark and flooded. Dr. Dominguez physically examined the Children and noted the presence of

bruising consistent with inflicted trauma. Father defended some of his actions, maintaining that he merely disciplined the Children in accordance with his Islamic faith. He denied other allegations, which he said were fabricated by the Children because they were rebelling against his religion.

In August 2021, the parents were arrested. Father's arrest resulted in a no-contact order, which suspended visits with the children. Father also failed to comply with the single case plan. Although he completed the anger management and parenting programs, these objectives remained on the case plan because Father continued to display anger during the visits and when speaking to the Children.

DHS eventually petitioned to change the goal of the dependency proceedings from reunification to adoption and to terminate Father's rights. The court held the termination hearing over several days on March 14, March 28, and June 2, 2022. On August 11, 2022, the court articulated its findings on the record and entered decrees terminating Father's rights to each respective Child. Father timely filed appeals. In his consolidated Brief, Father presents the following issues for our review:

> 1. Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights where such determinations were not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (a)(5), and (a)(8)?
>
> 2. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the

child[ren] as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b)?

3. Whether the trial court abused its discretion in granting a goal change to adoption, where the goal change from reunification to adoption was not supported by clear and convincing evidence?

4. Whether Father's case was irreparably harmed by counsel's representation, which fell below ordinary attorney representation?

5. Whether Father's case was irreparably harmed by judicial bias?

Father's Brief at 8.

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive

- 10 -

case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate could should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." **In re P.Z.**, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

**In re C.M.K.**, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re C.S.**, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting **Matter of Adoption Charles E.D.M., II**, 708 A.2d 88, 91 (Pa. 1998)).

Critically, we may uphold a termination decision if any proper basis exists for the result reached. *C.S.*, 761 A.2d at 1201. We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Therefore, we review the trial court's termination of Father's rights under Section 2511(a)(2), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> […]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). Parents are required to make diligent efforts toward the reasonably prompt

- 12 -

assumption of full parental duties. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).

We note that the grounds for termination are not limited to affirmative misconduct like abuse but concern parental incapacity that cannot be remedied. *See id.* This case, however, explicitly concerns abuse. The trial court set forth its Section 2511(a)(2) findings on the record:

> [T]he testimony of Dr. Dominguez, which I found credible, was that these children, not only were they subject to continued and repeated abuse, whether by denying food or being hit in the head with 2-by-4s, being hit with extension cords, being made to get into showers that were hot, and then with cords that were run under cold water, being hit with those cords, Dr. Dominguez went a step further from saying that that's abuse. In fact, she indicated that that meets the definition of child torture. And while she testified, and, again, credibly, that neither [Ab.D, A-R.D. 1 or A.-R.D. 2.] disclosed any abuse, the physical findings on those children's bodies were consistent with the physical findings on the bodies of [T.R., S.T.S., and I.D.], all of whom disclose physical abuse in the manner in which they were abused. And so the fact she also determine that based on photos review from [Ab.D.] and well as her physical examination of [I.D., T.S., and A.-R. D. 1, and A.-R.D. 2,] that the markings on [A.-R.D.1, A.-R.D. 2, and Ab.-D.'s] body were consistent with he physical abuse that was disclosed as to [T.R., S.T.S., and I.D.] in their PCA interviews. […]
>
> In addition to what the children disclosed in their PCA interview and to their CUA case manager, because Ms. McNeill also testified that [I.D., T.R., and S.T.S.] disclosed abuse, found in the transcripts that were entered into evidence that were part of this court's prior hearings, [S.T.S., I.D., and T.R.] testified *in camera* as to the abuse that they suffered. And this court found them credible when they testified *in camera*. All counsel was present for those hearings, except for TPR counsel, as she was appointed after those hearings.

- 13 -

And so the testimony has been consistent each time these Children have disclosed as to what they were subjected to in [Father's] and [Mother's] home. And I have to say, I started out as a social worker working with families in the system. I worked for nine years as a solicitor for DHS. And I've been on the bench. This is my fifth year. I have never ever heard a doctor testify that what children suffered was torture. I'm speechless.

And so this court is going to find that while there was no testimony as to the younger children, the testimony of Dr. Dominguez as an expert that the fact that sexual abuse was found as to [T.R], and physical abuse as to the other Children, all of the Children in Mother and Father's care would be at risk. And so I am terminating for all the Children under [Section] 2511(a)(2). Specifically, [T.R., I.D., S.T.S., A.-R.D. 1, A.-R.D. 2, and Ab.D.] suffered actual abuse at the hands of their parents consistent with the markings on their bodies.

N.T., 91-94.

On appeal, Father notes that termination under Section 2511(a)(2) was erroneous, because past incapacity, alone, in not sufficient to terminate a parent's rights. *See* Father's Brief at 26 (citing *In re Adoption of A.N.D.*, 510 A.3d 31 (Pa. Super. 1986)). Father maintains that DHS only put forth evidence of past behaviors and thus could not establish that termination was warranted. Father also argues that because only the older Children disclosed abuse, and the court improperly concluded that Father abused the younger Children.

These arguments merit no relief. It has long been established that the use of prognostic evidence applies to both dependency cases, as well as termination cases. *See In re E.B.*, 83 A.3d 426, 433 (Pa. Super. 2013); *see also In re Angry*, 522 A.2d 73, 74-75 (Pa. Super. 1987). The court may

consider a parent's previous actions, toward an older sibling, when assessing the risk that the parent poses toward the younger child. The notion that a court is barred from such considerations "ignores the possibility that if the 'experiment' proves unsuccessful, the consequences to the child could be seriously detrimental or even fatal." ***Angry***, 522 A.2d at 74-75 (quoting ***Matter of DeSavage***, 360 A.2d 237, 241-42 (Pa. Super 1976)).

Although not every Child made a disclosure, the court agreed with Dr. Dominguez's expert opinion that all the Children would be at risk of abuse. Moreover, some of the younger Children, who did not disclose abuse, evinced the same bruising as that older Children who verbalized an allegation. Although Father may have complied with some aspects of his single case plan objectives, he has made no progress toward alleviating the causes of the Children's dependency. Thus, the court did not abuse its discretion when it concluded that Father's repeated abuse caused the Children to go without parental care, and that such abuse cannot or will not be remedied. The trial court did not err when it determined that DHS met its burden under Section 2511(a)(2).

Having discerned no error or abuse of discretion as to the first prong of the bifurcated termination analysis, we next address second prong under Section 2511(b), which comprises of Father's second appellate issue.

The section provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare

of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has explained further:

[S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting

bond to be too attenuated). Moreover, the court is not required to use expert testimony to resolve the bond analysis. *In re Z.P.*, 994 A.2d 1108, 1121 (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008)).

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Instantly, the caseworker testified that there was no bond worth preserving between Father and each of the respective Children. Though some Children had desired to have contact with Mother, none requested to see Father. I.D. was fearful of Father. S.T.S. did not consider Father to be her biological parent. Moreover, the Children also demonstrated positive behaviors after the parental visits were suspended. The court also noted that the two youngest Children have spent more of their life in foster care than they did with Father. *See generally* N.T. 102-115

On appeal, Father argues that DHS failed to prove that bonds do not exist between the Children and Father. *See* Father's Brief at 30. Father argues that there was competing testimony as to the bonds, and that the trial court failed to fully consider the needs and welfare of the Children when it

decided to side with the testimony of DHS rather than the testimony of the parents.

We find Father's arguments unpersuasive. We reiterate that when there no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **K.Z.S.**, 946 A.2d at 762-63. Furthermore, the mere existence of "competing testimony" does not mean the trial court's ultimate determination was somehow deficient. A trial court must necessarily resolve the competing evidence and testimony when rendering its factual findings and legal conclusions. Lastly, Father also misunderstands the role of this Court. As noted above, we do not search the record for contrary conclusions or substitute our judgment for that of the trial court. **See S.K.L.R.**, 265 A.3d at 1124. Rather, we must affirm even if evidence exists that would also support a contrary determination. **See P.Z.**, 113 A.3d at 849. With this standard in mind, and upon our review, we discern no abuse of discretion or error of law.

Having concluded that the trial court properly terminated Father's rights as to each Child, we turn our focus to Father's third appellate issue. Here, Father claims the trial court erred when it changed the goals of the dependency cases from reunification to adoption. Because we have already concluded that termination was warranted, we dismiss these challenges as moot. **See Interest of D.R.W.**, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

Next, we consider Father's fourth appellate issue, where he claims ineffective assistance of counsel. Father claims his counsel was ineffective because counsel failed to object to certain leading questions. *See* Father's Brief at 33. Father also claims that his counsel failed to argue that Father's disciplinary methods were informed by his Islamic faith. *Id.*

Our Supreme Court has recognized that an indigent parent has a constitutional right to counsel in a termination case. *In re J.T.*, 983 A.2d 771, 774 (Pa. Super. 2009) (citing *In re Adoption of R.I.*, 312 A.2d 601 (Pa. 1973). "The right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature." *J.T.*, 983 A.2d at 774-75 (citing *In re Adoption of T.M.F.*, 573 A.2d 1035 (Pa. Super. 1990) (*en banc*) (further citation omitted)). "We [] review the record as a whole to determine whether or not the parties received a 'fundamentally fair' hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was 'the cause of the decree of termination." *Id.* at 775 (citations omitted).

Upon review, we do not find that counsel was ineffective. Neither counsel's failure to object to certain questions, nor his supposed failure to contextualize Father's religious beliefs was a cause for the entry of the termination decrees. Quite plainly, the driving cause of the termination of Father's rights was his "torture" of the Children, his failure to address such harm, and the subsequent effects of that harm on the Children. Father's fourth appellate issue is without merit.

- 19 -

Finally, in his fifth appellate issue, Father claims the trial court demonstrated bias. He alleges that the court only paid "lip service" to the fact that the family was Muslim. *See* Father's Brief at 35. Father maintains that their "religious practices around discipline included using corrective teaching and learning the Quran, the main Muslim scripture." *Id.* Father claims the court did not inquire into the cultural values of the family. *Id.*

We review challenges to a court's partiality for an abuse of discretion. *See Commonwealth v. McCauley*, 199 A.3d 947, 950 (Pa. Super. 2018). Both our Supreme Court as well as the Supreme Court of the United States have addressed how a judge's partiality cuts directly to an individual's right to due process:

> It is axiomatic that a fair tribunal is a basic requirement of due process. *See* U.S. Const. Amend. XIV. The United States Supreme Court has recognized that a litigant's due process rights are violated when the circumstances of a judicial decision give rise to an unacceptable risk of actual bias. *Williams v. Pennsylvania*, -- U.S. --, 136 S.Ct. 1899, 1908 (2016). Moreover, the appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as the actual presence of bias or prejudice. *Commonwealth v. Goodman*, 311 A.2d 651, 654 (Pa. 1973).
>
> However, simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant. *Commonwealth v. Travaglia*, 661 A.2d 352, 367 (Pa. 1995).

*Interest of D.J.B.*, 230 A.3d 379, 385 (Pa. Super. 2020) (quoting *McCauley*, 199 A.3d at 950-51).

- 20 -

We note several problems with Father's challenge. First, Father did not seek recusal during the hearing. A party seeking recusal or disqualification based on judicial bias or impartiality is required to raise the objection at the earliest possible moment, or the party will suffer the consequences of being time barred. *Jordan v. Pennsylvania State University*, 276 A.3d 751, 762 (PA. Super. 2022) (citations omitted); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Second, if Father means to argue that the court's bias was not evinced until its ultimate decision, he has failed to demonstrate how. Father's brief does not Father cite to any specific instance where the court evinced bias, nor does Father cite to any pertinent legal authorities beyond the Judicial Code of Conduct. It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal. *See* Pa.R.A.P. 2119. For these reasons, we find the issue is waived.

In sum, we conclude that the trial court did not error or abuse its discretion when it determined DHS met its burden to terminate Father's rights under Section 2511(a)(2) and (b). Given this conclusion, we dismiss Father's goal change challenges as moot. We further conclude that Father's counsel was not ineffective, and we conclude that Father waived his claim that the trial court evinced bias.

Termination decrees affirmed. Goal change orders affirmed.

Judge Nichols joins the memorandum.

- 21 -

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2023