J-S14017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: E.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF : L.S., FATHER | No. 1373 MDA 2015 |

Appeal from the Decree July 13, 2015
in the Court of Common Pleas of Cumberland County
Orphans' Court Division, at No(s): 68 Adoptions 2014

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.*, JJ.

MEMORANDUM BY PANELLA, J.                    **FILED MAY 27, 2016**

L.S. ("Father") appeals from the decree entered on July 13, 2015, in the Court of Common Pleas of Cumberland County, which involuntarily terminated his parental rights to his minor son, E.S., born in November 2010. We affirm.

C.J. ("Mother") is the biological mother of E.S. Father has helped to support Mother, financially and otherwise, and has helped in raising E.S. and Mother's other children. Cumberland County Children and Youth Services ("CYS") became involved with the family due to the family experiencing financial difficulties resulting in homelessness. Because of the parents'

---

* Former Justice specially assigned to the Superior Court.

homelessness, the trial court found E.S. dependent and placed him into foster care with B.J.A. and B.A. on September 24, 2012.

At the foster home, E.S. resides with M.J., his sister, and with four other children. Testimony showed that E.S. gets along with the foster parents' other children. Testimony also showed that E.S. has been provided with structure and stability in his foster home and that E.S. has been adjusting to a head start program. B.A., the foster father, testified as to foster parents' intent to adopt E.S. if given the opportunity.

A permanency plan was set up for Father, which included the following goals: cooperate with CYS; obtain and maintain stable housing; follow the rules of home and community; meet medical and dental needs; improve parenting skills; and obtain financial stability.

Father has not met his first goal of cooperating with CYS. Testimony was provided that showed that it was very difficult for CYS to get in touch with Father by phone. When CYS attempted to reach Father by other means, Father has been similarly unreachable and uncooperative. When CYS showed up at Father's door, the door was not answered, even though the CYS employees heard voices or the television on inside the home. Father also failed to appear for nine visits with E.S., provided with ABC Services to teach Father better interaction with his child. In addition, Father has refused to participate in bonding evaluation of the relationship between him and E.S., despite the fact that it was recommended. Father failed to appear for the

first scheduled termination of parental rights hearing in January 2015. Father's attorney reported that he had fallen on ice, but the CYS solicitor reported that Father was not there because of a bench warrant being issued for his arrest.

Father has met his goal of obtaining and maintaining stable housing. He has maintained the same residence for 15 months and is up-to date on his rent payments.

Father has failed to meet his goal of following the rules of home and community. Father was incarcerated from March 7, 2015, until May 14, 2015, for failure to pay fines. Father still owes $200.00 to domestic relations and over $6,000.00 in criminal fines. Father has also been paying fines on Mother's behalf. In addition, Father has not met the goal of meeting the medical and dental needs of Child. Father has not attended a single medical or dental appointment for Child since Child was placed in foster care.

Father also has not met his goal to improve parenting skills. Testimony was given that SKILLS, a parenting program, was offered to Father, but Father missed nine out of the twenty-nine appointments due to running errands, working, or being ill. Father's excuses for missing the SKILLS sessions included such activities as picking up a birthday cake, washing the car, and grocery shopping. Following four straight missed SKILLS sessions, Father was dismissed from the program in April 2015. Father has also been attending STEPS visitation with Child. In addition,

Father has refused to participate in a bonding evaluation. In fact, testimony was presented that, when CYS encouraged Father to participate in the evaluation, Father expressed that he had "given up on the [reunification] process."

Father's final goal was to obtain financial stability. Testimony was presented that Father worked long hours in order to support Mother and their family. However, Father and Mother both have significant court-ordered financial obligations, which they rely on Father to pay. The repeated failure to meet the court-ordered obligations has resulted Father's incarceration in March 2015.

On August 14, 2014, CYS filed a Petition for Involuntary Termination of Father's Parental Rights to Child. The trial court held hearings on September 3, 2014, January 14, 2015, and May 6, 2015. By decree entered on July 13, 2015, the trial court involuntarily terminated Father's parental rights to the Child pursuant to Section 2511(a)(2),(5),(8), and (b).

Father timely appealed. Father raises three issues on appeal:

> 1. Did the court err in determining that Cumberland County Children and Youth Services presented evidence so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction without hesitancy, of the truth of the precise facts in issue?
> ...
>
> 2. Did court [sic] err in determining the best interest of the child would be served by terminating the parental rights of the biological Father?
> ...

> 3. Did the court err as a matter of law and abuse its discretion in determining the best interest of child would be served by terminating the parental rights of Father, when the evidence indicated that the original reasons for placement of child would no longer exist or had been substantially eliminated?
>
> …

Father's Brief at 4.

We review the appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). This court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Mother's parental rights under, among others, subsection (a)(2) and (b) of Section 2511. Those subsections provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Further, this Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id*., at 340.

With respect to Section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child. In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the

effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations and internal quotation marks omitted).

With the above standard of review in mind, we have thoroughly reviewed the record, briefs, and the applicable law, and determined that the evidence presented is sufficient to support the trial court's decree terminating Father's parental rights to the Children pursuant to sections 2511(a)(2) and (b).

Our reading of the trial court's opinion reveals that the trial court reviewed the evidence and addressed Father's issues presented on appeal. Thus we affirm the trial court's order based on the concise, thoughtful, and well-written opinion of the Honorable Christylee L. Peck.

Decree affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2016

- 8 -

IN THE ADOPTION OF      : IN THE COURT OF COMMON PLEAS OF
E.J.S                : CUMBERLAND COUNTY, PENNSYLVANIA
                        : ORPHANS' COURT DIVISION
                        :
DOB: ▬▬▬         : No. 68 ADOPTIONS 2014

### IN RE: SUPPLEMENTAL OPINION PURSUANT TO PA.R.A.P. 1925

Peck, J., October 21, 2015.

Appellant L▬▬ S▬▬ (hereinafter "Father") is the biological father of E.S. (born ▬▬▬) (hereinafter the "Child"). On August 14, 2014, Cumberland County Children and Youth Services (hereinafter "CYS") filed a Petition for Involuntary Termination of Parental Rights of L▬▬ S▬▬ Under Section 2512 of the Adoption Act (hereinafter the "Petition for Involuntary Termination" or the "Petition") in the above-docketed case in order to terminate Father's parental rights as to the Child. CYS listed 23 Pa.C.S. § 2511(a)(2), (a)(5), (a)(8), and (b) as the statutory grounds for termination. Counsel was appointed to represent Father,[1] and a hearing was held on this matter on May 6, 2015. The matter was taken under advisement,[2] and on July 10, 2015, this Court granted the Petition for Involuntary Termination, thus terminating Father's parental rights as to the Child. On August 10, 2015, Father filed a Notice of Appeal and a Statement of Errors Complained of on Appeal, alleging the following errors:

1. The Honorable Court erred as a matter of law and abused its discretion in changing the goal for this child to adoption and terminating Appellant's parental rights in that Appellant is able to provide the children with essential parental care, control, and subsistence.

2. The Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights when the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated.

---

[1] Order of the Court, August 15, 2014.
[2] Order of the Court, May 6, 2015.

1

#3

3. The Honorable Court erred as a matter of law in determining the best interest of the child would be served by terminating Appellant's parental rights.

At the same time that it terminated Father's parental rights, this Court terminated the parental rights of C̶a̶̶̶̶̶̶̶ (hereinafter "Jackson"), the biological mother of E.S. This Court wrote an in-depth Opinion on the reasons for the termination of Jackson's parental rights. Although that Opinion also discussed Father's conduct, this Court, in error, failed to specifically address the reasons that it terminated Father's parental rights. This Supplemental Opinion is written to address the reasons for terminating Father's parental rights, and is meant to be read in conjunction with the Court's Opinion Pursuant to Pa.R.A.P. 1925 regarding the involuntary termination of Jackson's parental rights.

## FACTUAL AND PROCEDURAL HISTORY

L̶̶̶̶ S̶̶̶̶ is the biological father of E.S.[3] Father lives with Jackson and supports J̶̶̶̶ and several children, despite the fact that Father is not the biological father of all of J̶̶̶̶'s children.[4] (He if not the father of M.J., the child that is the subject of the companion appeal). Unfortunately, CYS has repeatedly been involved with Father and Jackson in regard to their care of children, but on this instance, CYS became involved with the Child's well-being due to the homelessness of Father and J̶̶̶̶.[5] However, once CYS became more involved with the Child, it became apparent that homelessness wasn't the only concern; CYS also came to be concerned about improper parental care and control.[6] As a result, the Child was placed in the foster care of B̶̶̶ J̶̶ and B̶̶̶ A̶̶̶̶ (hereinafter the "A̶̶̶̶s" or the "A̶̶̶̶ family") on September 24, 2012.[7]

---

[3] Notes of Testimony May 6, 2015 (hereinafter "N.T.") at 60.
[4] N.T. at 70. *See also,* CASA Report, May 6, 2015, entered as Court's Exhibit 1 to the May 6, 2015 hearing.
[5] N.T. at 50.
[6] N.T. at 53.
[7] N.T. at 25, 39.

2

After the initial placement of the Child, CYS filed a Permanency Plan for Father, which included the following goals: (1) Cooperate with CYS; (2) Obtain and Maintain Stable Housing; (3) Follow the Rules of the Home and Community; (4) Meet Medical and Dental Needs; (5) Improve Parenting Skills and (6) Financial Stability.[8] The Court heard the following testimony regarding Father's progress towards meeting each of these goals.

Father has not met his first goal of cooperating with CYS. Testimony was given that it is very difficult for CYS to get in touch with Father by phone.[9] When CYS has attempted to reach Father by other means, he has been similarly unreachable & uncooperative. CYS has shown up at Father's residence, but the door has not been answered, even though the employees heard voices or the television on inside the home.[10] Father failed to appear for nine visits with the Child provided by ABC Services to teach Mr. S███ better interaction with the Child.[11] Additionally, testimony was given that Father has refused to participate in a "bonding evaluation" of the relationship between himself and the Child, despite the fact that it was recommended by the Guardian *ad litem* and this Court granted a continuance of the involuntary termination hearing scheduled for January 14, 2015 in order for such an evaluation to be conducted.[12] Indeed, Father failed to appear for that first scheduled termination of parental rights hearing in January, 2015.[13] His attorney reported he had fallen on ice,[14] however the CYS solicitor reported that Mr. S███ was not there as a result of a bench warrant being issued for Mr. S███'s arrest.[15] Nevertheless, Mr. S███ attorney argued that if a bonding evaluation was to be ordered, that it should be completed prior to moving forward with the termination hearing.[16]

---

[8] N.T. at 36, 37, 39, 40; *see also* CYS's Petition for Involuntary Termination, Section G.
[9] N.T. at 36.
[10] N.T. at 36.
[11] N.T. at 31.
[12] N.T. at 28.
[13] Notes of Transcript, Jan. 14, 2015 (hereinafter "Jan. N.T." ) at 4-6.
[14] Jan. N.T. at 4-5.
[15] Jan. N.T. at 6.
[16] Jan. N.T. at 5.

Accordingly, Mr. S███ attorney agreed to continue the hearing[17] and presumably explained the significance of Mr. S███ participation in the bonding evaluation to Mr. S███

Presently, Father has met his goal of obtaining and maintaining stable housing.[18] Father has maintained the same residence for 15 months,[19] and testimony was given that Father and J███ are up-to-date on their rent payments and have been paying the same on time.[20]

Father has failed to meet his goal of following the rules of the home and community. Father was incarcerated from March 7, 2015 until March 14, 2015 for failure to pay fines.[21] Father still owes $200 to domestic relations and over $6,000 in criminal fines,[22] and he has also been paying fines and costs on J███'s behalf when she has been incarcerated for failure to pay the same.[23] Because of his ongoing payment obligations, it is certainly possible that Father will be incarcerated again in the future if he fails to make payments in a timely manner.

Likewise, Father has not met the goal of meeting medical and dental needs. Father has not attended a single medical or dental appointment for E.S. since the Child's placement with the Amsleys in September of 2012.[24]

The next goal which the Service Plan establishes for Father is to improve parenting skills. Father has not met this goal. Testimony was given that SKILLS was offered, but that Father missed nine out of the twenty-nine total appointments due to running errands, working, being in pain, or being ill.[25] Father's excuses for missing the SKILLS COURSE sessions included picking up a birthday cake, washing the car, and

---

[17] Jan. N.t. at 5.

[18] N.T. at 37.

[19] N.T. at 65.

[20] N.T. at 37.

[21] N.T. at 38.

[22] N.T. at 38.

[23] N.T. at 69.

[24] N.T. at 39.

[25] N.T. at 31, *see also,* Alternative Behavior consultants Summary of Skills Services, March 31, 2015, entered as Children and Youth's Exhibit 4 on May 6, 2015..

grocery shopping.[26] Following four straight missed sessions, Father and Mother were dismissed from the SKILLS in April of 2015.[27] Father has been attending STEPS visitation with the Child, although he has brought another child, I███, to the sessions, despite the fact that I███ and E███ do not get along.[28] Father was specifically asked not to bring Isaiah to the sessions, but he and J█████ did so anyway, which once resulted in a cancelled session.[29] Finally, as discussed above, Father has refused to participate in a bonding evaluation, despite several attempts by CYS to explain the process and how it might be helpful to his case.[30] In fact, testimony was given that, when CYS reached out to Father about the bonding evaluation, he expressed that he had "given up on the [reunification] process."[31]

The final goal which was set for Father was to obtain financial stability. Testimony was given that Father works long hours in order to support Jackson and their family.[32] Father's hard work has allowed him to maintain some degree of financial stability over the past year.[33] However, Father and J█████ both have significant court-ordered financial obligations, which they also rely on Father to pay.[34] The repeated failure to meet these court-ordered financial obligations has resulted in J████'s incarceration three times since January of 2015,[35] as well as Father's incarceration in March of 2015.[36] Therefore, although Father has achieved some modicum of financial stability, this Court has concerns about whether this stability will continue.

As a result of Father's failure to meet the goals outlined in the Permanency Plan, as well as the Amsley family presenting itself as an adoptive resource, CYS filed the Petition for Involuntary Termination. This Court granted the Petition for Involuntary

[26] N.T. at 32.
[27] N.T. at 27.
[28] N.T. at 27.
[29] N.T. at 27.
[30] N.T. at 30.
[31] N.T. at 30.
[32] N.T. at 40, 69-70.
[33] N.T. at 65.
[34] N.T. at 69.
[35] N.T. at 37.
[36] N.T. at 38.

Termination, thus terminating Father's parental rights as of July 10, 2015. This appeal followed.

## DISCUSSION

Under Pennsylvania's jurisprudence, a trial court must conduct a two-pronged analysis under 23 Pa.C.S. § 2511 when deciding whether to involuntarily terminate the parental rights of a natural parent. *See In re I.G.*,939 A.2d 950, 952 (Pa. Super. 2007). First, a court must determine whether appropriate grounds for involuntary termination of parental rights exist under § 2511(a). *Id.* If grounds exist under section (a), then the court must determine whether the termination of parental rights is in the best interest of the children under § 2511(b). *Id.* Under section (a), the focus is on the parent's conduct, while under section (b), the focus is on the needs of the child. *Id.* at 956. It is well established that a party seeking termination of parental rights bears the burden of establishing, by clear and convincing evidence, that grounds for involuntary termination exist. *Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

In the present case, the Petition for Involuntary Termination filed by CYS sought to terminate Father's parental rights under several provisions of Section 2511(a) of the Adoption Act. The particular subsections of the Act relied upon by CYS provide as follows:

(a) General Rule – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

...

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

...

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are

6

not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

...

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(2),(5), and (8). Although CYS listed multiple subsections as its grounds for involuntary termination, it only needed to prove that grounds for termination existed under any one of the subsections. *In re: L.S.G.*, 767 A.2d 587, 590-91 (Pa. Super. 2001).

As set forth more fully below, this Court found clear and convincing evidence to support involuntary termination under each of the above-listed sections. The Court also found that termination of Father's rights was in the best interest of the Child under § 2511(b).

## I. Sufficient grounds exist for involuntary termination under 23 Pa. C.S. § 2511(a)(2).

Under § 2511(a)(2), this Court found clear and convincing evidence that the repeated incapacity, neglect, and refusal of Father has caused the Child to be without essential parental care, and that the conditions causing the same cannot or will not be remedied by Father. As the Superior Court has noted,

> The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties. Nevertheless, *parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities.* A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of resources, may properly be rejected as untimely or disingenuous.

*In re of K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008)(emphasis added). Additionally,

7

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. *These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.*
>
> ...
>
> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. *Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.*

*In re B., N.M.*, 856 A.2d 847 (Pa. Super. 2004)(internal citations omitted)(emphasis added).

In the present case, this Court found that Father has not made a diligent effort to assume full parental responsibilities; Father has failed to utilize all of the resources provided to help make him a better parent and to help support a parent-child relationship. Furthermore, this Court did not find that Father is capable of remedying the incapacity, neglect and refusal in order to provide care for the Child in the immediate future.

At the time that the Child was originally adjudicated as dependent, Father received a Permanency Plan, which contained many goals designed to make Father a better parent and to reunite him with the Child. Undoubtedly, meeting the goals outlined in the Permanency Plan would require significant life changes on Father's behalf, but life changes were necessary for Father in order for him to be an effective parent. Over two and a half years have now passed since the Child was first placed in the foster care of the Amsleys, and Father has met only two of his six goals. His progress toward meeting the other four goals has been minimal at best, and his lack of efforts evidence his reported desire to give up on the reunification process.

When Father had the opportunity to better himself as a parent by attending the SKILLS sessions offered by CYS, he repeatedly did not show up for scheduled sessions and was dismissed from the program in April of 2015. Father prioritized activities such as washing the car and going grocery shopping over improving himself as a parent and

8

visiting with the Child during the sessions. CYS employees who have worked on this matter report that Father is frequently unreachable and sometimes uncooperative. Father has also failed to take an active role in meeting the medical and dental needs of the Child during the two and a half years that he has been in foster care. Furthermore, when Father had the opportunity to cooperate with the Guardian *ad litem*'s recommendation for a bonding evaluation between himself and the Child, he refused to participate, despite having the purpose of the evaluation explained to him, as well as the fact that the evaluation could be beneficial to his interests.

Father's actions demonstrate the type of "passive interest in the development of the child" lamented in *In re B., N.M.,* and are not indicative of the "affirmative performance" required to demonstrate that Father is capable of remedying the incapacity, neglect and refusal which led to the placement of the Child in foster care. Taking an active interest in cooperating with CYS, working to reach the goals set in a permanency plan, taking the Child to medical appointments, or at least appearing at them, and showing up to visits are "necessary steps to supporting a parent-child relationship" where the child has been adjudicated as dependent, such as in the present case. *See In re E.A.P.,* 944 A.2d 79, 83 (Pa. Super. 2008). After giving Father a significant amount of time to meet these goals and better himself as a person and parent, this Court no longer believes that Father is capable of remedying the incapacity, neglect and refusal which led to the Child's placement in September of 2012. Therefore, this Court found that grounds for involuntary termination of Father's parental rights existed under § 2511(a)(2).

II.  **Sufficient gronnds exist for involnntary termination under 23 Pa. C.S. § 2511(a)(5).**

Alternatively, under § 2511(a)(5), this Court found clear and convincing evidence supporting involuntary termination. The Pennsylvania Superior Court has established the following standards for terminating parental rights under subsection (a)(5):

> In order for termination pursuant to Section 2511(a)(5) to be proper, the following must be demonstrated: (1) the child has been removed from

9

parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re A.S.*, 11 A.3d 473, 482 (Pa. Super. 2010)(internal citations omitted).

In the present case, the Child was taken out of the custody of Father and placed in foster care on September 24, 2012, due to concerns about homelessness and improper parental care and control. Thus, the Child has been out of Father's custody much longer than the six months required by § 2511(a)(5).

For the same reasons discussed above, including Father's propensity for being unreachable, Father's incarceration for failure to pay court-ordered financial obligations, Father's dismissal from SKILLS, and Father's refusal to take an active role in the Children's medical and dental health, this Court believes that the concerns regarding Father's ability to provide essential parental care and control continue to be of concern in the present matter. Additionally, this Court does not believe that Father is able to remedy those concerns within a reasonable time. As stated above, Father has had two and a half years to change his lifestyle and make progress toward the goals in the Permanency Plan to prove that he can be a suitable parent for the Child. He has not done so.

This Court also believes that the services offered to Father by CYS are unlikely to remedy the concerns regarding Father's ability to provide parental care and control. CYS has offered a wide variety of helpful services, but it is incumbent upon Father to take advantage of those services. Father has been unavailable and uncooperative when CYS has attempted to reach him at home. Father was discharged from SKILLS for his repeated failure to show up to scheduled sessions. Father was unwilling to undergo a bonding evaluation. Therefore, this Court does not believe that the services offered by CYS will remedy the conditions which led to the Child's removal within a reasonable period of time.

10

Finally, this Court believes that terminating Father's parental rights would best serve the needs and welfare of the Child. The Child is in need of a loving and stable environment in which to grow. The A████s have provided such an environment, while Father has not proven that he can provide the same. Therefore, this Court believes that sufficient grounds existed to terminate Father's parental rights under § 2511(a)(5).

### III. Sufficient grounds exist for involuntary termination under 23 Pa. C.S. § 2511(a)(8).

Under 23 Pa. C.S. § 2511(a)(8), this Court found by clear and convincing evidence that the Child has been removed from Father's custody for longer than twelve months, that the conditions which led to the Child's removal still exist, and that termination will best serve the needs and welfare of the Child. As the Superior Court has noted,

> Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of DHS supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of DHS services.

*In re of K.Z.S.*, 946 A.2d at 758 (internal citations omitted).

The Child has been living in a foster home for over two and a half years, which meets the twelve-month temporal requirement of §2511(a)(8). Furthermore, as set forth more fully above, this Court found that concerns still exist regarding Father's ability to provide the Child with necessary parental care and control. Additionally, this Court found that involuntary termination of Father's parental rights best serves the needs and welfare of the Child given the loving and stable environment provided by the A████ family. Therefore, this Court believes that sufficient grounds existed to terminate Father's parental rights under §2511(a)(8).

11

## IV.    Involuntary termination is in the best interest of the Child under 23 Pa. C.S. § 2511(b).

Unlike the analysis a court conducts under § 2511(a), the analysis under § 2511(b) focuses on the interests of the child. This analysis includes "weighing the needs and welfare of the child, as well as an examination of the emotional bond between parent and child... which 'encompasses intangibles such as love, comfort, security, and stability.'" *In re I.G.*, 939 A.2d at 956 (citing *In re D.W.*, 856 A.2d 1231, 1234 (Pa Super. 2004); quoting *In re Adoption of R.J. S.*, 901 A.2d 502, 514 (Pa. Super. 2006)).

In the present case, E.S. was placed into foster care before his second birthday; this Court believes that the Child's placement into foster care at such a young age has rendered a strong, healthy bond with Father nearly impossible. Father had an opportunity to prove the strength of the bond between himself and the Child by participating in the bonding evaluation, but he refused to take part. The results of the bonding evaluation did show a bond between the Child and the A████.

Concerning the mental and physical needs of the Child, this Court believes that the Child has a great need for stability and permanency in his life. The Child has now been living in the A████'s home for more than two and a half years. The evidence showed that the A████ have provided a safe, stable, and loving environment for the Child, and that a bond exists between the Child and the A████ family.[37] The A████ plan to adopt the Child if given the opportunity.[38] The bonding evaluation completed on the Children and the A████ showed that the Child and his sister, M.J. (who is the subject of the companion appeals) should be kept together.[39] The Guardian Ad Litem recommended the Child and M.J. remain with the A████.[40] This Court finds that adoption by the A████ would provide the stability that the Child desperately needs in his life. In contrast, as noted above, Father has continually faced stability problems with

---

[37] N.T. at 10-15, 28.

[38] N.T. at 57.

[39] N.T. at 29. *See also,* Bonding Evaluations Report, entered as Children and Youth's Exhibit 5 at May 6, 2015 hearing.

[40] N.T. at 75.

12

both income and incarceration, and this Court does not believe those issues will be resolved any time soon. Thus, the A████ family can provide the Child with the stability and permanence that he needs, whereas Father cannot.

Therefore, this Court found that involuntary termination of Father's parental rights is in the best interest of the Child under § 2511(b).

## CONCLUSION

In summary, this Court found clear and convincing evidence to support termination of Father's parental rights under 23 Pa. C.S. § 2511(a)(2),(5), and (8) based on Father's continual failure to cooperate with CYS and his failure to make progress toward the goals established in his Permanency Plan. Furthermore, this Court found that termination of Father's parental rights under § 2511(b) is in the best interest of the Child because Father is unable to provide the stable environment that the Child needs.

BY THE COURT,

_____
Christylee L. Peck,    J.

Lindsay D. Baird, Esq.
Cindy Villanella, Esq.
Joseph Hitchings, Esq.
Kathleen Shaulis, Esq.
CCCYS

13