J-A31042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LUZERNE COUNTY CHILDREN AND YOUTH SERVICES AND GUARDIAN AD LITEM | No. 1038 MDA 2014 |

Appeal from the Decree entered May 27, 2014
In the Court of Common Pleas of Luzerne County
Orphans' Court at No: A-8132

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:              **FILED JANUARY 28, 2015**

Luzerne County Children and Youth Services (Agency) and the Guardian *ad Litem* for K.J. (Child) (collectively, "Appellants") appeal from a decree denying the Agency's petition to terminate the parental rights of Q.R. (Father) to Child.  Upon review, we affirm.

Child is currently four years old.  Her involvement with the courts began on March 26, 2012, when the Agency filed dependency petitions regarding her and her then-one-year-old brother, Z.J.  Z.J. had been admitted to the hospital with serious injuries: bleeding between his brain and skull and a healing broken arm.  To its petition, the Agency attached the following allegations of dependency:

> On March 23, 2012, [Z.J.] was admitted to Geisinger Danville, from some facility in either Lackawanna [C]ounty or Luzerne

[C]ounty. [Z.J.] was admitted with bilateral retinal hemorrhaging, bilateral subdural hematoma, and a healing right humerus fracture. The natural parents indicate that [Z.J.'s] injuries were caused by him getting hit by a toy, [thrown] by this minor [C]hild.

Physicians at Geisinger indicate that the trauma is non-accidental, and that the explanation provided by the natural parents is not plausible to cause [Z.J.'s] injuries. The natural parents are unwilling to explain the injuries[,] which are consistent with facts, thereby placing this [C]hild in present danger.

Dependency Petition, 3/27/12, at 5. The Agency obtained temporary custody of the children. The children were placed in foster care, where they remain to date. On May 25, 2012, the trial court adopted the recommendations of a juvenile master, and adjudicated Child dependent. As part of the dependency adjudication, the trial court incorporated a Service Plan for Father.

The Service Plan provides the following reason for Father's initial referral:

[Z.J.] has bilateral retinal hemorrhages, bilateral subdural hematomas, and an old right humerous [sic] fracture. At first, [Mother] and [Father] were unable to provide a medically plausible explanation for the injuries. [Mother] later admitted to shaking [Z.J.] when he would not stop crying.

Master's Recommendation for Adjudication and Disposition—Child Dependent, 5/25/12, Attached Service Plan at B-1. The Service Plan lists the parenting knowledge and mental health of both parents. *Id.* The Service Plan called for the Agency to refer Father to a parenting class and mental health evaluation, and provide supportive counseling. *Id.* at F-1 – F-

3. Father was required to participate in counseling and receive a mental-health evaluation. *Id.* at F-1 – F-3.

Shortly after Child's placement, Mother confessed to police that she caused the injuries to Z.J. Child Protective Services never investigated Father and had no suspicion that he was involved in Z.J.'s abuse, notwithstanding the Agency's initial concerns. *See* N.T., 2/27/12, at 36-37.

Thereafter, dependency proceedings continued with required periodic permanency review hearings before the juvenile master. On July 20, 2012, the trial court adopted the master's findings following the three-month review hearing. Crucial to the trial court's eventual decision regarding termination, the July 20 order notes that Father lived in New York state, but that he lacked legal immigration status at the time. Order and Master's Recommendations, 7/20/12, at 2 (unpaginated). As such, he was not eligible to receive services. The order notes further that Father could not be referred for Agency-provided services, because he lived out of state, but that an interstate compact had been submitted. *Id.* at 10 (un-paginated).

On November 21, 2012, the trial court adopted the master's findings made following another permanency review hearing. The master found that Father had not complied with the permanency plan or alleviated the circumstances leading to Child's placement, because he had not engaged in court-ordered services. Order, 11/21/12, at 1-2. The trial court adopted similar findings following a March 18, 2013 permanency review hearing.

In October 2013, the Agency petitioned the trial court to change the goal for Child from reunification with her parents to adoption. The Agency also filed petitions to terminate Mother's and Father's parental rights. Regarding Father, the Agency averred he had failed to remedy the conditions causing the placement by not addressing his mental health issues, submit to random drug tests,[1] or acknowledge the severity of Z.J.'s injuries. Petition for Termination of Father's Parental Rights, 10/25/13, ¶ 11. The Agency also contended Father was not a placement resource at the time of Child's placement, and he had not remedied that deficiency.

After a continuance, the trial court held a hearing on February 27, 2014 on the Agency's goal-change and termination petitions. At the beginning of the hearing, Father revealed that he recently discovered that he is not Z.J.'s natural father. Therefore, he voluntarily relinquished his parental rights to Z.J. For her part, Mother voluntarily relinquished her parental rights to both children.

At the hearing, the evidence showed that Father had limited resources, and his lack of legal immigration status hindered his ability to receive services. In fact, two attempts to establish interstate compacts with New York failed, in part because of Father's lack of legal residency. ***See*** Trial

---

[1] It is unclear why the Agency required Father to undergo drug testing. At the termination of parental rights hearing, the Agency's caseworker admitted the Agency had no concerns that Father ever was using illegal drugs or abusing alcohol. N.T., 2/27/14, at 48-49.

Court Rule 1925(a) Opinion, 5/27/14, at 4. About ten months after Child's placement, Father became a U.S. citizen, which allowed him to apply for Temporary Assistance for Needy Families (TANF),[2] and provide public assistance and medical coverage to Child.

The parties agreed to incorporate the dependency proceedings into the record. To meet their burden, Appellants procured the testimony of Jessica Sprow, an Agency caseworker; Sarah Thompsen, a mental-health counselor; and Paul Durang, a family development specialist with Family Service Association of Northeast Pennsylvania. Sprow testified that Child was placed in foster care because of the injuries sustained by Z.J. and the fact that neither Mother nor Father gave a medically plausible explanation for those injuries. N.T., 2/27/14, at 17. Sprow also noted Father's mental-health issues, and that he missed two urinalysis appointments—despite admitting that Father had tested negative during two other drug screening and the Agency had no concerns that Father was using illegal drugs. *Id.* at 22-30, 48-49. Sprow also detailed problems setting up services for Father because he lived in New York with his mother. *Id.* at 26-27, 42-45. Finally, Sprow noted that during supervised visits, Father paid more attention to Z.J.—who has Shaken Baby Syndrome—than to Child. *Id.* at 31-35, 51-52.

---

[2] TANF is a federal program that provides block grants to states to, among other things, assist needy families. *See* 42 U.S.C. §§ 601-19.

Thompsen testified that Father suffers from anxiety and showed indicators of narcissistic traits. *Id.* at 73-78. As a result, she requested that Father seek treatment from a psychiatrist. *Id.* at 79-80. On cross-examination, she stated that Father's mental-health issues might interfere with his ability to parent, but that therapy, or possibly medication, might be helpful. *Id.* at 81-83.

Durang testified as to his involvement with Father in the parenting program. Over ten months, Father completed 13 out of 15 lessons regarding parenting skills, but was discharged from the program for lack of progress. *Id.* at 89-90. Corroborating Sprow's testimony, Durang testified that Father often paid more attention to Z.J. than to Child during supervised visits. *Id.* at 94-97, 156-58.

Following the conclusion of testimony, the trial court took the goal-change and termination requests under advisement. On March 12, 2014, the trial court entered an order changing the goal for Child to adoption. On May 27, 2014, the trial court issued an opinion, which it termed a "Memorandum Issued Pursuant to Pa.R.A.P. 1925(a)" denying the petition to terminate Father's parental rights to Child.

Following the trial court's decision, Appellants moved for reconsideration. To their motion, they attached the March 12, 2014 dependency order changing the goal to adoption. In response, Father,

averring that he had never been served with the goal-change order, moved to reconsider the goal-change order.[3] The trial court vacated the March 12 order, later admitting it had signed that order—which the Agency prepared—in error. Trial Court Supplemental Rule 1925(a) Opinion, 7/7/14 2 n.1. The trial court refused, however, to reconsider its order denying Appellant's termination petition. This appeal followed.

Before this Court, Appellants raise six claims of error. However, at the core, Appellants' appeal can be encapsulated into one main issue and two subsidiary issues. Appellants' main argument is:

I.    Did the trial court err in finding that [the Agency] failed to meet its burden by clear and convincing evidence for Father's termination of parental rights [under 23 Pa.C.S.A. § 2511(a)(2), (5), and (8)]?

---

[3] The record supports Father's contention. **In fact, no record evidence exists regarding service of any orders entered in the dependency case**. The orders themselves contain merely stamps reflecting filing. There is nothing written or stamped on the orders reflecting service, and no certificates of service by the clerk of courts exist. The docket contains only evidence of the orders' filing.

The Rules of Juvenile Court Procedure require the clerk of courts (or the equivalent officer) to serve court orders and notices on the litigants, and to keep a record of the "date and manner of service of the order or court notice." Pa.R.J.C.P. 1166(C)(8), 1167(B). That was not done here. This Court is troubled by the lack of any record evidence showing the clerk of courts served the dependency court orders on the parties. Amplifying our concern is the fact that Father was never served with the goal-change order—an order that affected his parental rights.

Appellants' Brief at 3 (capitalization removed). The two subsidiary arguments are Appellants' claims that (1) the trial court abused its discretion in limiting the presentation of evidence at the termination hearing; and (2) a claim that the trial court assumed facts not of record. Appellant's other arguments are subsumed within its first claim. We will address this appeal accordingly.

In cases involving the termination of parental rights, our scope of review is broad and comprehensive, though our standard of review is narrow. *In re P.S.S.C.*, 32 A.3d 1281, 1285 (Pa. Super. 2011); *In re Adoption of M.R.B.*, 25 A.3d 1247, 1251 (Pa. Super. 2011). We must accept the factual findings of the lower court that are supported by the record. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). We may reverse only if the lower court erred as a matter of law or abused its discretion. *Id.*

In termination proceedings, the petitioner bears the burden by clear and convincing evidence. *Adoption of M.R.B.*, 25 A.3d at 1251.

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

*Id.* (internal quotations and citations omitted).

In this case, Appellants argue the trial court erred in failing to terminate Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2), (5), and (8); and (b), which provide:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

 **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not

consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511 (other sections omitted). Termination of parental rights is proper where any one subsection of § 2511(a) is satisfied, along with the considerations of § 2511(b). *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Therefore, we must examine whether the trial court abused its discretion in not terminating Father's parental rights to Child under each of the three subsections at issue here, § 2511(a)(2), (5), and (8). We address Subsection (2) first. Then, we address Subsections (5) and (8) together.

"The grounds for termination of parental rights under section 2511(a)(2) are not limited to affirmative misconduct. The grounds include acts of refusal as well as an incapacity to perform parental duties. Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*, 93 A.3d 888, 895-96 (Pa. Super. 2014) (internal citations omitted). A party seeking termination under § 2511(a)(2) must demonstrate:

(1)    repeated and continued incapacity, abuse or neglect;

(2)    that causes the child to be without essential parental care, control, or subsistence; and

(3)    the causes of the incapacity, abuse, or neglect cannot or will not be remedied.

*See id.* at 896 (quoting *In re Geiger*, 331 A.2d 172, 173-74 (Pa. 1975)).

Regarding § 2511(a)(2), the trial court found Appellants failed to carry their burden:

- 10 -

In the case at bar, the evidence adduced at trial does not support the contention that Father has displayed a repeated and continued incapacity to perform parental duties for [Child]. The conditions which gave rise to placement involved abuse by Mother. Father has displayed a commitment to reunification with his daughter in that he has worked toward obtaining his citizenship status, which therefore enabled him to provide medical assistance for his [C]hild[,] and enables him to provide housing assistance for his [C]hild. He visits with his [C]hild[,] and [C]hild calls him "other daddy." [N.T., 2/27/14, at 32.] Father did not receive an entirely favorable recommendation from his parenting education provider; however, the notes of testimony reveal that the testimony of Mr. Durang and Ms. Sprow contradict [sic] with regard to bonding between [C]hild and [F]ather. [*Id.* at 157-58, 205-06.] Based upon the evidence presented, this court finds that the Agency did not meet its burden[,] by clear and convincing evidence, that parental rights should be terminated [under § 2511(a)(2)].

Trial Court Rule 1925(a) Opinion, 5/27/14, at 4-5.

Appellants' argument mainly disputes the trial court's weighing of evidence, which is the trial court's role. We are not in a position to reconsider factual findings supported by the record. Moreover, though Appellants note that Father never completed his court-order services, they fail to note that (1) the Agency had no suspicion that Father was using illegal drugs; or (2) that Father completed 13 out of 15 lessons with Durang. As the trial court stated, termination of parental rights requires proof by clear and convincing evidence. *Id.* at 5-6. We find no abuse of discretion in its finding that Appellants did not carry their burden regarding § 2511(a)(2).

Termination under § 2511(a)(5) and (8) is similar. Each subsection concerns termination of parental rights to a child who has been placed under the care of an agency.

- 11 -

To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012) (citing *In re Adoption of M.E.P.*, 825 A.2d 1266, 1273-74 (Pa. Super. 2003)).

Similarly, section (a)(8):

sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court. Once the 12–month period has been established, the court must next determine whether the conditions that led to the child[ren]'s removal continue to exist, despite the reasonable good faith efforts of [the agency] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [agency] services.

*In re T.M.T.*, 64 A.3d 1119, 1125-26 (Pa. Super. 2013) (quoting *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008)).

Here, it is undisputed that Child has been under the Agency's care for more than 12 months. The trial court found that the condition leading to the placement of Child—the abuse of Z.J.—no longer exists because Mother admitted to committing the abuse and Father has been cleared of any involvement. Appellants argue that the trial court erred in failing to take

- 12 -

into account the service plan attached to the dependency orders. We find Appellants' argument unpersuasive.

The record supports the trial court's determination that Child was originally placed because of the injuries to her half-brother, Z.J. The order permitting the Agency to take custody of Child, the order adjudicating Child dependent, and the Agency caseworker's testimony at the termination hearing show that the condition giving rise to the placement of Child **was the abuse of Z.J.** Mother initially accepted responsibility for Z.J.'s abuse (but later recanted), and Father has been cleared. As such, this case is not analogous to *In re I.J.*, 972 A.2d 5, 11-12 (Pa. Super. 2008),[4] because there, the conditions leading to placement (the mother's incapacity) continued to exist. Appellants fail to acknowledge the reason for Child's placement. Though a service plan may have been developed as part of that placement, it was not the reason that the Agency took custody of Child. Because the conditions leading to Child's placement no longer exist, the trial

---

[4] In *I.J.*, the agency took custody of the children because of the mother's mental health issues, physical limitations, and inability to care for two of her other children, who had been adjudicated dependent and were living with a foster care family. *I.J.*, 972 A.2d at 7-8. We held the trial court erred in considering the mother's attempts to remedy the conditions leading to placement, which is not a factor to consider under § 2511(a)(8). *Id.* at 11-12. We stated, "the trial court did not find that either Mother or Father had remedied the conditions that led to removal of I.J." *Id.* at 12. In contrast, the trial court here found the conditions leading to placement of Child—the abuse of Z.J. by Mother—had been remedied.

- 13 -

court did not abuse its discretion in refusing to terminate parental rights under § 2511(a)(5) or (8), and we need not address the remaining factors for application of those subsections.

Appellants cite *In re J.T.*, 817 A.2d 505 (Pa. Super. 2003), to support their proposition that parental rights may be terminated under § 2511(a)(5) or (8) notwithstanding the alleviation of the condition giving rise to placement if **another** reason supports continued placement of the child. That is not what we held in *J.T.* Rather, we merely reaffirmed the plain meaning of § 2511(a)(8): that alleviatory steps taken by the parent (inability to parent and inadequate housing in that case) are irrelevant under § 2511(a)(8). That subsection requires only that the conditions leading to placement continue to exist. *Id.* Thus, *J.T.* actually supports our ruling here, because the conditions leading to Child's placement (Mother's abuse of Z.J.) do **not** continue to exist.

We reemphasize that this Court is not the proper forum to argue that witnesses were not credible. Appellants insinuate that Father was somehow at fault for Z.J.'s injuries, but they point to no supporting evidence or trial court findings. Moreover, Appellants mistakenly rely on the trial court's findings adopted in the March 12, 2014 goal-change order. The trial court vacated that order, having entered it in error.

We next briefly address Appellants' argument regarding the trial court's limiting of evidence of Father's progress in services relating only to Z.J. "The admission or exclusion of evidence . . . is within the sound

discretion of the trial court." ***In re K.C.F.***, 928 A.2d 1046, 1050 (Pa. Super. 2007); ***see also*** Pa.R.E. 611 (granting trial courts authority to exercise reasonable control over the examination of witnesses and presentation of witnesses). We have some difficulty understanding Appellants' argument, because they cite no supporting authority, and instead merely claim the excluded evidence was "relevant." It appears Appellants contend this evidence was pertinent to show Father's lack of parenting ability. We find no abuse of discretion by the trial court, especially given that Appellants have provided no authority supporting their argument. Moreover, we note that the provision of services to Father, while pertinent to his parenting ability, did not concern whether the conditions leading to placement continued to exist under § 2511(a)(5) and (8).

Finally, we address Appellants' argument that the trial court "assumed facts not of record." We have been unable to decipher Appellants' argument. The difficulty is compounded by the insufficiency of Appellants' concise statement on this matter. Indeed, the concise statement was so imprecise that the trial court was forced to guess what Appellants were arguing. ***See*** Trial Court Supplemental Rule 1925(a) Opinion, 7/7/14, at 16-17. Again, given that Appellants cite no authority to support their vague proposition, we find no merit to this argument.[5]

---

[5] Because no statutory grounds for termination existed under 23 Pa.C.S.A. § 2511(a), the trial court did not need to address the best interests of Child

*(Footnote Continued Next Page)*

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2015

---

*(Footnote Continued)*

under § 2511(b). ***See In re M.T.***, 101 A.3d 1163, 1178-79 (Pa. Super. 2014) (*en banc*) (noting the analysis under § 2511 is bifurcated, and a court must first determine that statutory grounds exist for termination under § 2511(a)).