J-S49015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.D.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: D.T., FATHER | No. 3404 EDA 2015 |

Appeal from the Decree October 7, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000037-2015

BEFORE:  PANELLA, J., OLSON, J., and STEVENS, P.J.E.[*]

JUDGMENT ORDER BY PANELLA, J.                    **FILED AUGUST 15, 2016**

Appellant, D.T. ("Father") appeals from the decree entered on October 7, 2015, which involuntarily terminated his parental rights to his female child, K.D.T. ("Child"), born in June 2013, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and changed the permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]

The trial court aptly set forth the factual background and procedural history of this appeal, which we adopt herein. **See** Trial Court Opinion, at 1-

_____

[*] Former Justice specially assigned to the Superior Court.

[1] On October 7, 2015, the trial court terminated the parental rights of T.B., Child's mother, and, on May 12, 2016, this Court affirmed. **See In the Interest of: K.D.T., a Minor**, 3376 EDA 2015 (Pa. Super., filed May 12, 2016) (unpublished memorandum).

2. Father timely filed a notice of appeal. In his brief, Father raises whether the trial court erred in finding that: 1) grounds for termination of parental rights had been proven by "clear and convincing evidence; 2) the Philadelphia Department of Human Services ("DHS") had met its burden under 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8); and 3) DHS had met its burden to prove that termination would be in the child's best interests under section 2511(b). In his fourth issue, Father challenges whether the trial court erred in denying him due process and equal protection of law, as guaranteed by the Constitutions of the United States and the Commonwealth of Pennsylvania. *See* Father's Brief, at 4.

Father failed to preserve his fourth issue for this Court's review. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).[2] With regard to Father's remaining issues, *i.e.*, the sufficiency of the evidence to prove section 2511(a)(1) and (b), based on our review of the testimonial evidence, we discern no abuse of discretion or error of law by the trial court.

_____

[2] For the same reason, we agree with the trial court that Father has waived any challenge to the change of permanency goal to adoption. *See* Trial Court Opinion, at 3.

***See In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).[3]

Accordingly, we affirm the decree based on the trial court's opinion.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/15/2016

---

[3] As this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any *one* subsection of section 2511(a), we focused on section 2511(a)(1) and (b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

In re: In the Interest of K.D.T.  : AP-51-DP-0000037-2015

: 51-FN-385325-2009

APPEAL OF: D.T. Father  : 3376 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant D.T, ("Father"), appeals from the order entered on October 7, 2015, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate Father's parental rights to K.D.T. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), (8) and (b). Daniel S. Kurland, Esquire, counsel for Father, filed a timely Notice of Appeal with a Statement of Errors Complained Of pursuant to Rule 1925(b).

**Factual and Procedural Background**

On June 24, 2013, Mother gave birth to the Child at Einstein Medical Center after thirty-five weeks of gestation. The Child was admitted to the Neonatal Intensive Care Unit. On June 28, 2013, the Child was ready to be discharge from the hospital; however, Father was not a resource due to his of lack of cooperation and aggressiveness. Consequently, DHS filed an application for an order of Protective Custody ("OPC"). DHS alleged that Father had a violent relationship with Child's Mother and that if Child were allowed to reside with Father, Child's safety would be at risk. On the same day, an OPC for the Child was obtained by DHS. On July 1, 2013, at the Shelter Care hearing, the Child was placed in foster care through New Foundations. The trial court lifted the OPC and ordered the temporary commitment to stand. The Child was adjudicated dependent on July 15, 2013. Father was granted supervised visits at the agency. On August 7, 2013, the Family Service Plan ("FSP") meeting was held. Father's goals were to maintain visits, attend Child's

medical appointments, attend domestic violence, and attend anger management counseling. On October 30, 2013, the FSP was revised. Father's objectives were to continue to participate in workshops, to complete the Achievement Reunification Center ("ARC") workshops, to maintain visits with his Child, to comply with all court orders, to meet regularly with the agency, to refrain from physical discipline, to comply with mental health treatment, sign releases, to ensure his whereabouts were known, and to comply with all recommendations. On November, 13, 2013, at a Permanency Review hearing, the trial court found Father non-compliant with FSP since he did not not avail himself.

On February 18, 2014, at a Permanency Review hearing, the trial court ordered Father to appear at the FSP meeting on February 27, 2014. Additionally, Father was prohibited to attend Mother's visits and was referred to the Behavioral Health System ("BHS") for evaluation and consultation. On May 13, 2014, the trial court found that Father had been offered weekly supervised visitation, but had not attended due to his work schedule. Father stated that he worked twelve hours, six days a week, and he was attending ARC. Father was granted visitation with his Child every Sunday from 12:00 PM to 2:00 PM at the court nursery after confirming his attendance every Friday. On September 17, 2014, the trial court found Father to be non-compliant with his FSP. The trial court granted Father weekly supervised visitation at Family School. Father was also ordered to comply with all the services of Family School. On January 21, 2015, DHS filed Goal Change and Termination petitions for the termination of parental rights of Father. On May 15, 2015, at a Permanency Review hearing, the trial court found Father in substantial compliance with his FSP. The trial court ordered Father to continue attending Family School and to provide employment documentation to DHS. Father's visitation remained at Family School. On September 17, at the Permanency Review hearing, the trial court ordered all prior orders to stand. On October 7, 2015, the trial court terminated Father's parental rights. On November 5, 2015, attorney for Father filed a timely notice of appeal.

**Discussion:**

On appeal, Father raises the following issues:

1. The judge ruled in error that the Philadelphia city solicitor's office meant its burden of proof. The burden in a termination hearing is clear and convincing evidence. There was

testimony that Father had achieved his FSP objectives. The issue that brought the Child into dependency had been rectified by the parent. The only barrier to reunification was economical. The city did not meet its burden of proof to terminate Father's rights under the Juvenile Act.

2. The judge ruled in error that it would be in the best interest and/or termination would best serve the needs of the Child. It would not be in the best interest of the Child or serve her needs if Father's parental rights were terminated under the Juvenile Act. Father and Child had a parental bond. The severing of this bond would greatly impact the above Child.

For purposes of this opinion, all appeal issues will be consolidated as whether the trial court abused its discretion under 23 Pa.C.S.A. (a), (1), (2), (5), (8), and (b). Father did not appeal the change of goal to adoption; therefore, he has waived this issue on appeal.

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511 (a). The Adoption Act provides the following grounds for §2511 (a) (1):

(a) **General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999). In Pennsylvania, a parent's right to custody and

rearing of his child is converted upon failure to fulfill his or her parental duties to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, and safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

DHS filed its petition to terminate Father's parental rights on January 21, 2015. (N.T. 10/07/15, pg. 8). During the last six months, immediately preceding the filing of the petition, Father has continuously failed to perform his parental duties. Nonetheless, as required in *In re B.N.M.*, the court considers the entire case history. DHS developed Father's goals and objectives as part of his FSP, and Father was aware of them. (N.T. 10/07/15, pg. 58). Father's objectives were to attend and comply with ARC recommendations, to attend anger management, domestic violence and parenting classes at Family School, to obtain and maintain employment, to obtain housing, to maintain contact with DHS social worker, and to attend Child medical appointments (N.T. 10/07/15, pgs. 47-48,108), (DHS exhibit 9, 15, 17, 18, 21 & 25).

Domestic violence and anger management classes were one of the most important FSP objectives for Father. (N.T. 10/07/15, pg. 59). However, Father declined addressing domestic violence services, and despite receiving an anger management certificate of completion, Father has shown no substantial improvement. (N.T. 10/07/15, pgs. 49-51). Lack of anger control is still a major issue for Father, he is always more angry than calm and has had too many outbursts during the life of the case. (N.T. 10/07/15, pgs. 50-51, 56). Father has been hostile and has acted inappropriately. (N.T. 10/07/15, pgs. 112-113). Even while in the courtroom, Father was hostile and constantly interrupted the proceedings, leading the trial judge to admonish him about his behavior. (N.T. 10/07/15, pgs. 50-51, 80-83). As to Father's parenting classes, the record established that Father completed his classes at Family School. (N.T. 10/07/15, pgs. 51-52). However, Father's completion occurred in the summer of 2015, after the petition for termination of Father's parental rights was already filed. (N.T. 10/07/15, pgs. 54, 60-61). Additionally, the Family School report recommends Father to continue attending Family School. (Mother Exhibit 3). As to Father's employment, the record revealed that Father stated that he is currently employed but no documentation verifying his employment has been provided to DHS. (N.T. 10/07/15, pg. 53). Father also declined to follow ARC recommendations by not attending several workshops suggested by ARC. Father only attended the ARC workshops that he decided to attend. (N.T. 10/07/15, pgs. 53-54, 109, 116). As it was established by ARC Father's status report, Father

declined to address housing, employment, healthy relationships and domestic violence counseling services. (N.T. 10/07/15, pgs. 49, 53-54,109, 116), (DHS Exhibit 24). Despite the fact that DHS requested more involvement of Father in Child's life, Father has not attended Child's medical appointments. (N.T. 10/07/15, pgs. 61,110,140). On February 18, 2014, Father stated that he was missing his visits due to the agency. On May 13, 2014, the trial court found that Father was offered weekly visitation but had not attended due to his work schedule. Father stated that he worked twelve hours a day, six days a week. Father started visiting his Child more often only after the trial court ordered him to attend Family School at the Permanency Review on September 17, 2014. (N.T. 10/07/15, pgs. 52). In fact, after Family School, Father was to contact DHS to continue visitation but he never did. (N.T. 10/07/15, pgs. 56, 112). Father has never had unsupervised visits with his Child. (N.T. 10/07/15, pg. 138). DHS social worker would not recommend unsupervised visits due to Father's continued angry outbursts and his lack of interest to perform parental duties for his Child. Father wants his family to be the main caretaker of the Child. (N.T. 10/07/15, pgs. 54-55). In regard to Father's housing, the record established that he has appropriate housing. (N.T. 10/07/15, pg. 53).

Father's lack of compliance continued for at least six months prior to the filing of the termination petition on January 21, 2015. On November 13, 2013, at a Permanency Review hearing, the trial court found Father non-compliant with his FSP. Again, on September 17, 2014, the trial court found Father to be non-compliant with his FSP. Accordingly, Father has failed to achieve his FSP goals during the life of the case and his FSP objectives have remained largely the same throughout the life of the case. As a result, the trial court found that Father evidenced a settled purpose of relinquishing his parental claim, and refused or failed to perform his parental duties during the six-month period immediately preceding the filing of the petition as required by §2511 (a) (1) of the Adoption Act. DHS has met its burden of clear and convincing evidence.

The trial court also terminated Father's parental rights under the Adoption Act at 23 Pa.C.S.A. §2511(a) (2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative

misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

The record established that Father has been unable to provide the Child with the essential parental care, control, and subsistence necessary for her mental and physical well-being, since June 28, 2013, when Child's Order of Protective Custody was issued (DHS Exhibit 11). Father has failed to successfully complete several FSP objectives, mainly to acquire the ability to manage his anger, acquire sufficient parenting skills, to provide verification of his employment, attend healthy relationships classes, domestic violence counseling services, and Child's medical appointments. (N.T. 10/07/15, pgs. 49-52, 53, 54, 59, 60-61, 109-110, 140), (DHS Exhibit 24), (Mother Exhibit 3). As a result, twenty-four months has not been enough to achieve the ability to manage his anger, acquire sufficient parenting skills, to provide verification of his employment, to attend healthy relationships classes, domestic violence counseling services, and Child's medical appointments. Under Father's current circumstances, he is unable to remedy the causes of his incapacity in order to provide his Child with essential parental care, control or subsistence necessary for her physical and mental well-being. Father does not attend the Child's medical appointments, and has no interest to provide permanency for his Child. He wants his family to be the primary caretaker of the Child. The Child has never lived with Father. Child was placed directly from birth. (N.T. 10/07/15, pg. 38). After months in foster care, Child needs permanency, which Father cannot provide at this moment. Consequently, DHS has met its burden under §2511 (a) (2) of the Adoption Act.

The trial court also granted DHS request for termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby a child may be removed, by court or voluntary agreement, and placed with an agency at least six months, if conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and/or termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized

that a child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The record indicated that Father has been unable to assume his parental duties since the Child was removed from Mother's home on June 28, 2013. Accordingly, Father's incapacity and reluctance to assume his parental responsibility, throughout the entire life of the case, has led the Child to remain in foster care. The Child has been in foster care twenty-four months. After all this time, Father has failed to acquire the ability to manage his anger, acquire sufficient parenting skills, to provide verification of his employment, to attend healthy relationships classes, domestic violence counseling services, and to be more involved in Child's life through his attendance at Child's medical appointments. Father has been given more than ample time to place himself in a position to be a parent to this Child, but he has failed to do so. On November, 13, 2013, September 17, 2014, May 15, 2015, the trial court found that DHS made reasonable efforts to reunify Father and Child. Father was aware of his FSP objectives. (N.T. 10/07/15, pg. 58). It is in the best interest of the Child to have a stable, nurturing, and permanent environment. (N.T. 10/07/15, pg. 124). Conditions that led to the placement of the Child continue to exist, and Father cannot remedy them within a reasonable period of time. DHS has met its burden under §2511 (a) (5) of the Adoption Act.

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS also met its burden by clear and convincing evidence that the Child has been out of Father's care for twenty-four months. The conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Child. Child has been continuously under DHS custody for a period of twenty-four months. Child was placed in foster care due to Father's lack of interest to provide permanency and lack of control of his anger. (DHS Exhibit 11). After twenty-four months, Father has not only failed to achieved the ability to manage his anger but also to acquire sufficient parenting skills, to provide verification of his employment, to attend healthy relationships classes, domestic violence counseling services, and to be more involved in Child's life through his attendance at the Child's medical appointments. Despite the good faith efforts of DHS to make services available, it is in the best interest of the Child to terminate Father's parental rights.

As to the second element of Section 2511 (a) (8) that the conditions, which led to the Child's removal, continue to exist, DHS has also met its burden. As in *In re: Adoption of K.J.*, 938 A.2d 1128, 1133 (Pa. Super. 2009), a termination of parental rights under section 2511 (a) (8) does not require the court to evaluate a parent's willingness or ability to remedy, which initially caused placement or the availability or efficacy of DHS services offered to Father. In this case, the trial court found that Father had failed to remedy the conditions that led to the removal of the Child, particularly his failure to achieve the ability to manage his anger, acquire sufficient parenting skills, to obtain employment, to attend healthy relationships classes, counseling services, and to being more involved in Child's life through his attendance to Child's medical appointments.

As to the third element of Section 2511 (a) (8), the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the Child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman*, 436 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). The Child has been in her respective pre-adoptive home almost since birth. The Child is in a safe home and stable environment with foster parents providing for all her needs. The Child needs permanency. Termination of Father's parental rights and adoption would best serve the needs and welfare of the Child. The testimony of the DHS witnesses was unwavering and credible.

Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship", *In re Adoption of T.B.B.*, 387, 397 (Pa.Super.2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case." *Id.* at 762-63. Also, under 23 Pa.C.S.A. §2511 (b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The record established that Child will not suffer any irreparable harm by terminating Father's parental rights, and it is in the best interest of the Child to terminate Father's parental rights. (N.T. 10/07/15, pgs. 78, 79, 124). Father and Child do not have a parent/child bond. The record established that the only consistent bond that exists is the bond between Child and foster parent. (N.T. 10/07/15, pg. 78). In fact, the Child did not ask for Father or speak about Father. (N.T. 10/07/15, pgs. 77, 115). Conversely, there would be an irreparable harm if the Child is removed from foster mother. (N.T. 10/07/15, pg. 79). Almost her entire life, Child has been with her foster mother and she is very closely bonded to her. (N.T. 10/07/15, pgs. 16, 38, 118). As a result, foster mother has raised the Child and has provided for her daily basic needs, such as taking the Child to her medical appointments and providing her comfort. (N.T. 10/07/15, pg. 79-80, 119-120, 140). DHS witnesses were credible. Father has not participated in Child's medical appointments. (N.T. 10/07/15, pgs. 79, 120, 140). Father's parental rights are not being terminated on the basis of environmental factors. Child has been in foster care for too long and needs permanency. It is in the best interest of the Child to be in a home that will keep her safe, provide stability, permanency and comfort for the Child's needs and welfare. Father has not planed how he would be able to care for his Child. Child needs permanency after being in care for twenty-four months.

## Conclusion:

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511 (a) and (b). The court also finds that it will not cause irreparable harm to the Child to sever any bond, and it is in the best interest of the Child, since it would best serve her emotional needs and welfare. Consequently, the court order entered on October 7, 2015, terminating the parental rights of Father, D.T., should be affirmed.

By the court

Joseph Fernandes, J.